BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
      mmoore@foxrothschild.com
*[Proposed] Counsel for Martifer Aurora Solar, LLC and*
*Martifer Solar USA, Inc.*

| Electronically filed January 22, 2014 |
| --- |

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
| --- | --- |
| In re | Case No.  BK-S-14-10357-abl |
| MARTIFER SOLAR USA, INC., a California corporation, | Chapter 11 |
| | **OMNIBUS DECLARATION OF KLAUS BERNHART IN SUPPORT OF FIRST DAY MOTIONS** |
| Debtor. | Hearing Date: OST PENDING<br>Hearing Time: OST PENDING |

KLAUS BERNHART, being duly sworn, hereby deposes and declares under penalty of perjury:

1.      I am over the age of 18, am mentally competent, and if called upon to testify as to the statements made herein, could and would do so.

2.      I am the Chief Financial Officer of Martifer Solar USA, Inc. ("Martifer USA"). Martifer USA holds no less than 99% of the membership interests in Martifer Aurora Solar, LLC ("Aurora").  Martifer USA and Aurora are the debtors and debtors in possession (collectively, the "Debtors" or the "Companies"), in the above captioned chapter 11 cases (the "Chapter 11 Cases").  I am a Manager of Aurora.  I am authorized to submit this declaration in support of the Debtors' chapter 11 petitions and motions for "first day" emergency relief (the "First Day Motions").[1]

---

[1]  Unless other defined, capitalized terms used herein shall have the meanings ascribed to them in the relevant First Day Motions.

ACTIVE 24550748v1

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

3.      In my capacity as Chief Financial Officer of Martifer USA and Manager of Aurora, and in conjunction with the efforts of the Companies' other respective officers, executives and senior management, I am involved in a management role on a day-to-day basis over all aspects of the Companies' affairs, including business operations, strategic planning, financial reporting, human resources, legal affairs and other management activities, as well as the Companies' efforts to address their current financial difficulties.

4.      As a consequence, I review and work extensively with the books and records of the Companies, including their respective business plans, financial statements and projections, business analyses and reports, contracts and other legal documents, notes and correspondence and similar items.  On a regular basis, I witness, participate in or have had reported to me discussions and negotiations with vendors, other creditors and stakeholders of the Companies, and have worked closely with personnel from all aspects of the Companies' business operations.

5.      Based on all of the foregoing, I have developed an intimate familiarity with: (a) the Companies' books and records, which are maintained in the ordinary course of business under my supervision and control (and under the control of officers of the Companies' respective executive and senior management); (b) the Companies' respective business and financial histories, and their current business and financial situations; (c) the financial and operation details of the Companies' business operations; and (d) the solar panel and renewable energy industry, generally.

6.      I have over 35 years of international experience in U.S. and European commercial and investment banking.  I have originated, structured, lead, managed and syndicated in excess of $25 billion of global energy/renewable energy transactions.  Over the course of 8 years, I served in several capacities at HSH Nordbank – including as the Senior Executive Vice President, the General Manager, the Regional Head of the Americas and the Global Head of Energy – where I positioned the bank as the top global financial institution in Renewable Energy with my success at the bank's New York branch.  Prior to HSH Nordbank, over the course of two decades, I worked at various banks in Germany and France, beginning as an analyst out of college and promoted progressively to the executive vice president level.  At Landesbank Schleswig-Holstein ("LBSH"), I developed a number of new business segments, such as aviation finance and structured finance.  Additionally, I

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

2

ACTIVE 24550748v1

was responsible for running and growing LBSH Leasing GmbH as its Managing Director, prior to its sale to AGV Leasing, a leading player in the German leasing market.   I attended Fachhochschule Munich, in Munich, Germany, with a professional certification called Bankkaufmann (i.e. banking).

7.    Except as otherwise stated herein, if called as a witness, I could and would competently testify to the matters set forth herein from my own personal knowledge.

8.    On January 21, 2014 (the "Petition Date"), the Debtors initiated their Chapter 11 Cases by concurrently filing voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

9.    The Debtors intend to operate their businesses and manage their properties as debtors-in-possession under section 1107(a) and 1108 of the Bankruptcy Code.

10.    I am advised by counsel that this Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and venue is proper in this United States Bankruptcy Court for the District of Nevada pursuant to 28 U.S.C. §§ 1408 and 1409.

11.    Debtors have filed their respective First Day Motions to allow them, individually and collectively, to efficiently and effectively operate in their Chapter 11 Cases.  The relief sought in the First Day Motions is critical to the Debtors' business operations, will allow for a comprehensive and smooth transition into Chapter 11, and will ensure that the Debtors are provided the opportunity to reorganize successfully.

**I.**

**GENERAL BACKGROUND**

**A.    Debtors' Businesses and Corporate Structure**

**(1)    Martifer Group**

12.    The Martifer Group (the "Parent"), a publically traded Portuguese corporation, is multinational, with over 3,000 employees worldwide.  The Parent is the holding company of a portfolio of approximately 120 companies that are divided into four core business units: Metallic Construction, Energy Equipment, Advanced Fuels, and Electricity Generation.  The construction division has built notable landmarks throughout Europe, including: five EuroCup soccer stadiums; the Dublin, Ireland airport; the EuroExpo Center Pavilions; the Madrid Hospital; and many more.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

3

ACTIVE 24550748v1

**(2)    Martifer Solar S.A.**

13.    Martifer Solar S.A. ("S.A."), a Portuguese company, is a wholly owned division of the Parent.  S.A. is a multinational solar developer and installation company with over 480 MW (megawatts) of solar assets installed worldwide and activities in more than 20 countries over four continents.  Its main activities are the production of solar photovoltaic energy systems, the construction of turn-key solar parks, and the promotion, licensing, operation and maintenance of such solar parks.

**(3)    Martifer Solar, Inc.**

14.    Martifer Solar, Inc., a Delaware corporation (the "US Parent"), is a subsidiary of S.A. and the direct parent of Martifer USA.  In addition to being the holding company for Martifer USA, the US Parent engages in the pursuit of certain solar development opportunities, and maintains limited ownership interests in certain solar development companies.

**(4)    Martifer USA**

15.    Martifer USA is one of the two Debtors here.  As noted above, Martifer USA is a subsidiary of S.A.  Martifer USA was originally founded in 2002 under the name of A&M Home Improvement, Inc. ("A&M").  Based on information and belief, A&M may have also previously done business under the name of "A & M Energy Solution."  A&M's core business originally focused on residential photovoltaic projects.  On or about March of 2008, the US Parent acquired a majority ownership interest in A&M.  For a period of time thereafter, A&M did business under the alias "Martifer Solar."  On or about August 25, 2010, A&M formally amended its name to Martifer Solar USA, Inc.  Since first acquiring its majority interest in Martifer USA in 2002, the US Parent has become the holder of substantially all of the Martifer USA's shares.[2]    Martifer USA is headquartered in Los Angeles, California, and has its sole office there.  Although Martifer USA previously had additional regional offices in Denver, Colorado and Greenwich, Connecticut, those offices have since been closed.  Martifer USA continues, however, to leverage local expertise in key regions to effectively execute planning, implementation and post-installation work nationwide.

---

[2]  Less than one percent (1%) of the equity is held by four former executives of Martifer USA prior to Roland Kiser's and my assignment as CEO & CFO, respectively.

ACTIVE 24550748v1

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

16.    Martifer USA has established itself as a solar Engineering, Procurement and Construction (EPC) company with a strong track record of implementing commercial and industrial scale installations throughout the country.  Martifer USA has become a trusted solar contractor to major construction companies and clients in the educational, nonprofit, commercial development, retail, government, military and utility sector.  Martifer USA has experienced rapid growth and completed projects throughout the United States. Martifer USA has installed more than 45 MW of solar assets nationwide, implementing a variety of solar technologies, including ground mounted systems, roof mounted arrays, building integrated photovoltaics, distributed arrays, and solar canopies.   Martifer USA continues to be called on for the engineering, procurement, and construction of large-scale commercial photovoltaic projects.

**(5)    Aurora**

17.    Aurora is the other of the two Debtors here.  Aurora is a wholly owned subsidiary of Martifer USA.  Aurora was incorporated in Nevada in 2010 to take ownership of certain solar photovoltaic projects constructed by Martifer USA in the Colorado area, which produce, in the aggregate, approximately 300 kW (kilowatts).  Aurora has a 20 year Purchase Power Agreement with the City of Aurora, Colorado.

**(6)    Studios Solar, LLC**

18.    Studios Solar, LLC ("Studios"), is a Delaware limited liability company that is wholly owned by Martifer USA.  Studios was formed on or about December of 2013 for the purpose of Martifer USA's taking of ownership to certain solar photovoltaic projects that had been constructed by Martifer USA (the "Studios Solar Projects").   More specifically, Studios is the holding company for Studios Solar 2, LLC, Studios Solar 3, LLC, Studios Solar 4, LLC, and Studios Solar 5, LLC, which LLCs directly hold title to four photovoltaic projects located in the Los Angeles area.  Generally, the Company took title to the Studios Solar Projects in lieu of amounts due to it by the original developer of the Studios Solar Projects.

**B.    Projects**

19.    The Debtors' current under construction portfolio consists of fourteen (14) commercial projects and one (1) legacy residential project across five (5) states with an aggregate

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

ACTIVE 24550748v1

rating of 11 MW. Additionally, Martifer USA has two pending utility scale projects with an aggregate rating of 6.8 MW located in North Carolina and California. The existing portfolio consists of projects located in the states of California, Colorado, New York, New Jersey and Massachusetts.

20.     The California project portfolio consists of four (4) projects, all roof top installations on commercial buildings. Two (2) of those projects are consolidated under one client at a retail pedestrian mall; the other two projects are with different clients. The Colorado portfolio consists of four (4) projects--three (3) of those being community colar arrays contracted under a single client; the fourth is a roof top project at the Denver International Airport with a longstanding company partner in the national car rental business. The projects in New York and New Jersey are airport roof top solar arrays on facilities owned by the same national car rental client. The Massachusetts portfolio consists of four (4) utility scale ground mounted projects distributed across the state.

21.     The vast majority of the projects within the current under construction portfolio were contracted prior the end of 2012. By and large, the bulk of the portfolio is substantially complete-- except the New York and New Jersey airport projects. Of those projects that have met substantial completion, representing 10.4 MW of the 11MW currently under contract, there are across the board "road blocks" that prevent the Companies from meeting the precedents to final completion, which road blocks are due largely to a lack of operating capital. All funds made available to the Debtors have been primarily used to pay or have been swept by Cathay Bank. Thus, many of the Companies' vendors have not been paid and work on the projects has stopped.

## C.     Financial Information

22.     As of, November 30, 2013, the date of latest financials presently available, the Debtors' unaudited financial statements reflect book value of their assets at $33.7 million, consisting of the following major categories: $0.8 million cash; $18.7 million in receivables; $0.6 million in inventory; $1.8 million in net property and equipment; $10 million of deferred income taxes; $1.7 million arbitration award; and $0.1 million in deposits. As of November 30, 2013, the Debtors' unaudited financial statements reflect book value of their liabilities at $35.1 million, consisting of the following major categories: $6.7 million secured loan; $14 million unsecured loan due to its parent;

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

6

$9.6 million in accounts payable; $1.3 million accrued liabilities; $0.5 million in other liabilities; $0.8 million deferred revenues; and $2.2 million in contractual penalties and loss provisions.

23.    During the year 2011, Martifer USA achieved revenues of $71.3 million.  After cost of goods sold, selling, general & administrative expense and interest expense, it recorded an operating income of $3.7 million.  In 2012, the revenue dropped to $42.6 million. With cost of goods sold of $44.5 million and selling, general & administrative expense of $6.0 million, Martifer USA suffered a negative operating result of -$7.9 million.  Interest expense, write-offs and provisions led to a loss of $9.7 million.

24.    The negative impact of Martifer USA's legacy projects, the necessary restructuring efforts and the necessity to rebuild sales from scratch led to a further drop of the 2013 revenue to $16.0 million. Cost of goods sold, selling, general & administrative expense and, additionally, needed provisions and write-offs resulted in a loss of $17.0 million.

**D.    Debtors' Prepetition Capital Structure**

25.    On November 15, 2012, Cathay Bank (the "Lender") originated a working-line of credit for the benefit of Martifer USA and Aurora, allowing them to draw up to a maximum principal amount of $12 million (the "Loan").  The Loan is evidenced in part by a Promissory Note dated November 15, 2012 (the "Note").  The Loan is generally secured by (i) Martifer USA's personal property described in that certain Commercial Security Agreement dated November 15, 2012, executed by Martifer USA in favor of the Lender ("CSA 1"), and (ii) Aurora's personal property described in that certain Commercial Security Agreement dated November 15, 2012, executed by Aurora in favor of the Lender ("CSA 2" and together with CSA 1, individually and collectively referred to as the "CSA").

26.    The US Parent executed a Commercial Guaranty dated November 15, 2012 in favor of the Lender, guaranteeing the indebtedness of the Companies owing to the Lender as described therein ("Guaranty 1"); likewise, S.A. (and, together with the US Parent, the "Guarantors"), executed a Commercial Guaranty dated November 15, 2012 in favor of the Lender guaranteeing the Companies' indebtedness to the Lender as described therein ("Guaranty 2" and together with

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

ACTIVE 24550748v1

Guaranty 1, individually and collectively referred to as the "<u>Guaranty</u>"). (The Note, the CSA, the Guaranty, and all related Loan documents are collectively, the "<u>Loan Documents</u>.")

27. The Lender has asserted that the Companies and the Guarantors have defaulted in their obligations to the Lender under the Loan Documents, as more particularly described in the default and demand letter delivered to Martifer USA on or about August 19, 2013 (all such asserted defaults are collectively, the "<u>Existing Defaults</u>"). As a result of the Existing Defaults, the Lender has asserted that the outstanding indebtedness under the "Loan Documents" has become immediately due and payable to the Lender.

28. The Loan Documents further provided a Loan maturity date of November 30, 2013. The Lender has asserted that the failure to pay the outstanding Loan balance by such date constituted the Companies' and Guarantors' further defaults under the Loan Documents.

29. As of the Petition Date, the outstanding balance of the Loan is approximately $6.4 million.

**E.    Events Leading to the Commencement of the Chapter 11 Cases**

**(1)    Debtors' Prior Business Model and Delays in Receivables**

30. Between, approximately, August of 2010 through the end of 2012, Martifer USA entered into a number of engineering, procurement, and construction agreements ("<u>EPC Agreements</u>"), pursuant to which Martifer USA agreed to act as the general contractor or "turn-key" subcontractor for the construction of large-scale solar developments (the "<u>Solar Projects</u>"). Martifer USA's financial troubles stemmed largely from delays in its receipt of receivables due in connection with the Solar Projects.

31. Under the EPC Agreements, Martifer USA provided the construction period financing for the Solar Projects, meaning that the bulk of the milestone payments and fees would be paid upon completion of the project. In the meantime, Martifer USA would be responsible for purchasing the solar panels, inverters and other equipment, and paying for the design, engineering, and installation labor. Due to competitive pressures in the solar industry, the Companies' prior management felt pressured to make deals that undercut their competitors in order to win projects. As a result, prior management often agreed to unrealistic financing terms and timelines to complete

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

ACTIVE 24550748v1

the work, and agreed to liquidated damages if there were delays. In addition, prior management: submitted bids that resulted in very narrow profit margins; performed incomplete due diligence on the sites, resulting in their underestimation of the construction challenges posed by the sites; and failed to take into consideration the likelihood of weather delays, among other problems. Many of the Solar Projects consequently were destined to create losses for Martifer USA, and these losses were exacerbated by liquidated damages, and disputes over when and whether projects were complete and moneys owed to it. Martifer USA frequently settled these disputes by taking a percentage of what was owed to it, in order to get cash in sooner and to avoid the costs of litigation. Thus, even on projects where there were built-in losses, Martifer USA did not receive payment in full. Due to these losses, the Companies had to lay off almost half of their work force a year ago, which further reduced their ability to sell new work and to complete existing projects. Moreover, former management had no sustainable backlog of new deals in order to sustain the business.

32.    A substantial portion of the Companies' receivables was and remains attributable to payments due in connection with federal and local solar incentive programs, including, without limitation, U.S. Treasury 1603 Cash Grants ("Section 1603 Grants"). There have been numerous reductions and delays in payments of solar incentives, including, without limitation, reductions caused by Federal "sequestration" and delays caused by governmental shutdowns. Delays and reductions in the receipt of these receivables were, and remain, outside of the control of the Companies' management. By way of background, the American Recovery and Reinvestment Act of 2009 created the 1603 Treasury Program to incentivize solar development by effectively subsidizing solar project costs. Through the 1603 Treasury Program, owners of commercial solar properties can obtain Section 1603 Grants equal to a percentage (up to 30%) of eligible project costs. Federal sequestration resulted in the reduction of anticipated Section 1603 Grant payments by roughly eight-percent. Likewise, federal governmental shutdowns have caused a delay in the remittance of Section 1603 Grants payments by several months.

33.    In addition to payment delays attributable to solar incentive programs, certain of Martifer USA's clients have withheld payments in breach of their agreements, even after completion of their projects' construction. Martifer USA has successfully pursued its legal rights and remedies

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

9

to recover such receivables, was recently awarded $1.7 million after binding arbitration to recover a receivable of equal amount, and also recently took title to the Studios Solar Projects. Although certain of Martifer USA's clients continue to improperly withhold payment, Martifer USA is confident that its continuing efforts to recover such payments will achieve similar success.

**(2)      The Loan Default; Lender's Threatened Appointment of a Receiver.**

34.      The delays described in the previous section were the primary contributing factor to the Companies' defaults under the Loan Documents.

35.      Specifically, the Loan Documents capped the Companies' maximum Loan balance based on a "Borrowing Base" calculated with reference to the Companies' "current" receivables. If the Loan balance exceeded the Borrowing Base, the Loan Documents required the Companies to make an immediate pay down of the Loan in the amount of the difference. Moreover, the Loan Documents provided that once receivables aged past 120 days (and became "stale" receivables), they were automatically deleted from and caused a decrease in the Borrowing Base; this, in turn, necessitated the Companies' immediate pay down of the Loan balance in an amount proportional to the decrease. Hence, each of the delays described in the previous section contributed to incremental reductions to the Loan Borrowing Base, ultimately requiring pay downs of the Loan.

36.      Based on information and belief, prior management informed the Lender that based on its experience on the residential side of solar construction, projects generally could be completed on a timeline less than 120-days. Based on information and belief, prior management further informed Lender that the Companies had transitioned largely to the commercial side of solar construction and payment timetables on the commercial side were much more subject to fluctuation as a typical commercial installation could take more than six (6) months to complete. Nevertheless, Lender seemingly originated the Loan with total disregard as to the information disclosed to it regarding the nature of the Companies' business and proceeded to include a Borrowing Base limitation in the loan documents based on a 120-day receivable "ripeness" approach.

37.      As a result of the Companies' inability to immediately pay down the Loan balance on account of decreases to the Borrowing Base, on or about August 19, 2013, the Lender called the

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

10

Companies to be in technical default under the Loan Documents and required the Companies to immediately pay down the full outstanding Loan Balance.

38.    The Companies' current executive management spent several months attempting to negotiate a reasonable forbearance agreement with the Lender.[3]  Since on or about August of 2013, the US Parent provided no less than $4.3 million to Martifer USA (the "Parental Cash Contributions"), which funds were largely used by Martifer USA to pay down substantial portions of the principal Loan balance and to fund Martifer USA's ongoing payroll obligations (thereby minimizing any depletion of the Lender's cash collateral).[4]  The Parental Cash Contributions were also used, in part, to pay certain critical payments due by Martifer USA.

39.    Unfortunately, despite having made substantial principal pay downs to the Lender totaling approximately $3.5 million between March 2013 and December 2013, the parties' forbearance agreement negotiations deteriorated in December 2013, and the Lender commenced sweeping no less than $400,000 out of Martifer USA's accounts, refused to provide Martifer USA with any electronic access to its account balances, and further threatened to decline the deposit of payment from Martifer USA's clients into Martifer USA's accounts.  Ultimately, as a result of the parties' inability to agree on reasonable forbearance terms, the Lender, on or about December 31,

---

[3]    It is worth noting that the Debtors' current executive management team only came on board in late 2012 – after the Debtors had already agreed to construct the Solar Projects and entered into the Loan – in an effort to assist the Debtors through their restructuring efforts.  All of the Debtors' former executives no longer remain with the Debtors.  As more fully addressed subsequently herein, the Debtors' new management team has been successful in significantly reorganizing the Debtors' operations and putting the Debtors on a path towards sustained substantial growth.

[4]    Martifer USA's books and records reflect that, in the aggregate, as of Dec. 31, 2013, $13,069,954.32 plus interest of $2,261,244.79, for a total of $ 15,331,199.11, is due by Martifer USA to the US Parent.  Each advance made to or for the benefit of Martifer USA was contemporaneously recorded in Martifer USA's accounting records as a debt due to the US Parent. Martifer USA's accounting records further reflect the accrual of interest due to the US Parent at the rate of EURIBOR + 5.5% per annum; accrued interest amounts are recorded on a monthly basis in Martifer USA's accounting records.  I am further informed that, on or about July of 2013, Martifer USA's sister company, Martifer Solar-Sistemas Solares, S.A., issued two letters of credit for the benefit of certain of Martifer USA's vendors, in order to assist in Martifer USA's procurement of project supplies.  I am informed that the aggregate amount of such issued letters of credit is $768,591.99 and am further informed that, on or about December of 2013, the vendors drew against such letters of credit.

11

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

2013,[5] commenced suit (the "Cathay Suit") against the Companies and the Guarantors to, among other things, collect all purported outstanding indebtedness. The Cathay Suit is pending before the Superior Court of California, County of Los Angeles, West District, bearing Case No. SC121853, and is captioned as "*Cathay Bank, a California banking corporation v. Martifer Solar USA, Inc., a California corporation; Martifer Aurora Solar, LLC, a Nevada limited liability company; Martifer Solar, Inc., a Delaware corporation; and Martifer Solar, S.A., a Portuguese corporation*." Through the Cathay Suit, the Lender has sought, inter alia, to appoint a receiver to marshal and liquidate the Lender's collateral.

40.     On or about January 13, 2014, the Lender effectively demanded that Martifer USA immediately turnover all of Martifer USA's cash. Because complying with such request would have left Martifer USA with absolutely no operating cash and required Martifer USA to shut down operations, Martifer USA declined to do so.

41.     On or about, January 21, 2014, the Lender provided notice to the Companies of the Lender's *Ex Parte* Application for the Appointment of a Receiver (the "Ex Parte Application"). A hearing on the Ex Parte Application was to be held 8:30 a.m. on January 22, 2014.

42.     On account of the Lender's actions during the months of December 2013 and January 2014 and upon receiving notice of the Lender's Ex Parte Application for appointment of a receiver and notification on January 21, 2014 that Lender froze Martifer USA's account at California Bank & Trust, the Companies' management immediately caused these Chapter 11 Cases to be commenced in order to preserve the Companies' going concern value for the benefit of all of the Companies' stakeholders.

**(3)     Trade Creditors, Vendors and Other Debts.**

43.     In addition to debts due to the Lender, the Companies generally are indebted to a multitude of trade creditors and vendors for services and goods provided in connection with projects constructed by the Companies. In the ordinary course of its business, Martifer USA procures equipment and supplies for the construction of solar projects. Likewise, Martifer USA enters into

---

[5] The Companies did not obtain or otherwise have any notice of the Cathay Suit until several days thereafter.

ACTIVE 24550748v1

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

subcontract and professional service agreements with various parties for their provision of particular work or due diligence related to the projects. To that end, Martifer USA's inability to bridge the gap caused by its delayed receivables through its working line of credit ultimately left Martifer USA without ability to pay a substantial amount of its trade creditors and vendors. The Studios Solar Projects and the EPG Projects (as subsequently defined herein) are two projects particularly noteworthy of discussion.

44.   In connection with the Studios Solar Projects, Martifer USA was, generally, to be paid through a combination of utility rebates available to the projects' off-taker (i.e. purchaser of the power produced) but originally assigned to the projects' developer, Section 1603 Cash Grants, project financing originally obtainable only by the projects' developer, and from revenues originally due to the developer by the projects' off-taker. In other words, payment to Martifer USA was largely tied to developer's "receivables" that likely would not be received until months after the commencement of the projects' construction. Likewise, it ultimately became apparent that the developer's efforts were ineffectual to obtaining project financing. Finally, even if all other sources of revenue or financing that were contemplated to be available to the developer were obtained, it became clear that the cost of construction of the Studios Solar Projects could not be repaid in full to Martifer USA even if the developer assigned the project energy cash flows to Martifer USA in full. In essence, while Martifer USA was accruing obligations to subcontractors and vendors in connection with the construction of the projects, in an amount ultimately exceeding $7.8 million (not including margin or carrying costs), Martifer USA was paid only a small percentage of such accrued amounts as payment from the Studios Solar Projects to cover its costs of construction. Much worse, the majority of all other potential available revenue that could be used for payment to Martifer USA was still months away from receipt. Martifer USA was simply unable to continue to singlehandedly finance the construction of the Studios Solar Projects. As of the Petition Date, Martifer USA had, generally, accepted title to the Studios Solar Projects in satisfaction of all payments outstanding to it from the developer. Further, as of the Petition Date, approximately $500,000.00 remains outstanding by Martifer USA to vendors and subcontractors in connection with the Studios Solar Projects.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

13

45.     Commencing on or about October of 2012, Martifer USA commenced construction of four separate solar projects generally located in the Massachusetts areas (collectively, the "EPG Projects").    EPG Solar, LLC ("EPG") acted as the developer with respect to EPG Projects. Generally, EPG brought together Washington Gas Energy Systems, Inc. ("WGES") as the off-taker for the project.    EPG arranged for BithEnergy Inc. / BithEnergy, LLC (collectively, "Bith") to effectively act a consultant for the projects; Bith contracted with WGES and agreed to ensure construction of the projects.    Finally, Bith contracted with Martifer USA to act as the turnkey contractor to build the projects.    Generally, WGES had committed to payment of a certain amount in exchange for the complete construction of the projects.    EPG, Bith, and Martifer USA were to contract amongst themselves as to the allocation of the total project price.    Ultimately, EPG, Bith, and Martifer USA entered into a variety of agreements throughout the course of the project construction that were intended to allocate the project costs and benefits between the parties.    EPG was, generally, to be entitled to payments based on a determination of actual "developer costs" and "EPC costs," which costs were to be determined after project completion in accordance with a "final cost audit."    Before completion of the projects EPG commenced the above captioned suit seeking payment of over $1.7 million allegedly due to it.    Moreover, with effectively less than 24-hours of actual notice received by Martifer USA, EPG obtained an injunction preventing certain project cash flows from flowing from reach-and-apply defendant WGES.    With no funds flowing in connection with the projects, project construction effectively came to a standstill; with no payments flowing to Martifer USA, Martifer USA was unable to continue to provide payment to its subcontractors and vendors.    As of the petition date, approximately $1.8mm (a portion of which is disputed) remained outstanding to vendors and subcontractors on the EPG Projects.

46.     In addition to project trade creditors and vendors, Maritfer USA stores certain of its assets, generally intended for use in project construction, in various warehouses across the U.S.    The Companies' pre-petition cash flow situation unfortunately also resulted in an inability to timely remit payment to such warehouse claimants.    These warehouse claimants generally have statutory liens against the products stored in order to ensure payment of amounts outstanding to them.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

ACTIVE 24550748v1

**(4)    Pending Litigation**

47.    The following comprise summaries of existing litigation in addition to the Cathay Suit.

48.    *California Power Save, Inc.; Christopher Frye, Plaintiffs v. Johnson-Chavez Construction, Inc. Jeremy Johnson, Defendants*, Superior Court of California, County of Los Angeles, Case No. BC510373; Cross-Complaint: *Jeremy Johnson; individually and as assignee of Johnson-Chavez Construction, Inc., Cross-Complainants vs. Christopher Frye; California Power Save, Inc.; Martifer Renewables; Solar Thermal, LLC., Solar Karma, LLC.; Alternative Energy Financing, LLC, Cross-Defendants*. Martifer USA and Alternative Energy Financing, LLC ("AEF") contracted for Martifer USA to construct solar photovoltaic projects located in Los Angeles, California. Christopher Frye purports to be the principal of AEF and its affiliate, California Power Save, Inc. ("CPS"). CPS commenced suit against Jeremy Johnson ("Johnson"), seeking declaratory relief with respect to Johnson's claims of entitlement to an equal partnership with CPS in the project venture. Johnson cross-claimed against CPS, AEF, and Martifer USA (improperly named "Martifer Renewables"), alleging that those entities were responsible for his damages arising from being shut out of the project. Martifer USA filed an answer that clarified the party denomination. The Court has ordered mediation, with a status conference of March 19, 2014. Trial is presently set for June 23, 2014. Pending discovery is due from Martifer USA on January 29, 2014.

49.    *Martifer Solar USA, Inc. v. Joseph Leo Bork dba Golden State Power, a California sole proprietorship, Gabriel Oliver Bork, et al.*, Superior Court of California, County of Kern, Case No. S1500CV-280885-DRL. Martifer USA commenced suit against Joseph Bork ("Bork") and Golden State Power ("GSP", together with Bork, "Bork/GSP") to: (1) collect amounts due on a promissory note (the "Note") executed by Bork/GSP in favor of Martifer USA with respect to Bork/GSP's purchase of photovoltaic modules; and (2) recover any modules in Bork/GSP's possession as an offset to amounts due under the Note. Upon commencement of the litigation, Bork/GSP voluntarily returned those modules still in their possession. Taking into account the projected offset due upon sale of the modules returned, Bork/GSP's total debt outstanding on the Note is about $350,000, plus interest, costs, and reasonable attorneys' fees. Martifer USA is

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

15

1    continuing the litigation to recover the deficiency due on the Note. Bork/GSP's answers are due on

2    January 24, 2014.

3         50.    *EPG Solar, LLC v. Bithenergy, Inc., a/k/a Bithenergy, LLC; Martifer Solar USA, Inc.;*

4    *Martifer Solar, SA*, Commonwealth of Massachusetts, Middlesex County; Civil Action No. 13-

5    03990. The background leading to this litigation is described in paragraph 45 herein. Before the

6    projects were completed, EPG filed suit against Bith, Martifer USA, and S.A., seeking payment of

7    over $1.7 million allegedly due to it. Moreover, EPG obtained an injunction preventing WGES from

8    making certain project cash payments. With no funds flowing in connection with the projects,

9    Martifer USA was unable to pay its subcontractors and vendors, and project construction came to a

10   standstill. Litigation is still progressing. Most recently, Martifer USA succeeded in enforcing

11   arbitration as to three of the four projects; and the Court stayed the litigation as to the fourth project

12   (not expressly subject to arbitration) to allow the arbitration on the other three projects to proceed.

13   Moreover, Martifer USA succeeded in obtaining dismissal with prejudice of all claims against S.A.

14   EPG is challenging the Court's decision to stay litigation as to the fourth project, and seeks to

15   introduce new claims against S.A. Approximately $200,000 is set aside in a third party party escrow

16   account for the purpose of satisfying any amounts that may ultimately be held owing to EPG.

17   Martifer USA disputes, among other things: (1) the amount that EPG alleges it is owed; and (2) the

18   imposition of approximately $900,000 in liquidated damages against it in connection with its

19   construction of the projects. Martifer USA has filed its own mechanics' liens against the projects.

20        51.    <u>Massachusetts Litigation</u>: Martifer USA is a defendant in several suits by various

21   subcontractors to: (1) recover various amounts allegedly due from Martifer USA for work

22   purportedly performed on land leased to WGES in Massachusetts; and (2) enforce mechanic's liens.

23   Two of the lawsuits expected to be dismissed within the week.

24        (a)    *Patriot Solar Group, LLC, Plaintiff v. Martifer Solar USA, Inc. and*

25   *Washington Gas Energy Systems, Inc., Defendants v. Bith Energy, Inc., Third Party*

26   *Defendant*, Commonwealth of Massachusetts, Middlesex County: Case No. MICV2013-

27   05081.

28

ACTIVE 24550748v1

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(b)    *Patriot Solar Group, LLC, Plaintiff v. Martifer Solar USA, Inc. and Washington Gas Energy Systems, Inc., Defendants v. Bith Energy, Inc., Third Party Defendant*, Commonwealth of Massachusetts, Worcester County: Case No. WOCV2013-02126.

(c)    *Northern Land Clearing, Inc., Plaintiff v. Martifer Solar USA, Inc. and Washington Gas Energy Systems, Inc.*, Defendants, Commonwealth of Massachusetts, Middlesex County: Case No. MICV2013-04673.

(d)    *Northern Land Clearing, Inc., Plaintiff v. Martifer Solar USA, Inc. and Washington Gas Energy Systems, Inc., Defendants*, Commonwealth of Massachusetts, Worcester County: Case No. WOCV2013-01931.

(e)    *Professional Electrical Contractors of Connecticut, Inc., Plaintiff v. Martifer Solar USA, Inc. and Washington Gas Energy Systems, Inc., Defendants*, Commonwealth of Massachusetts, Middlesex County: Case No. MICV2013-5508.

(f)    *Professional Electrical Contractors of Connecticut, Inc., Plaintiff v. Martifer Solar USA, Inc. and Washington Gas Energy Systems, Inc.*, Defendants, Commonwealth of Massachusetts, Worcester County: Case No. WOCV2013-2316.

(g)    *R. B. Arello Co., Inc. d/b/a Hydrograss Technologies, Plaintiff v. Martifer Solar USA, Inc. and Washington Gas Energy Systems, Inc., Defendants*, Commonwealth of Massachusetts, Worcester County: Case No. WOCV2013-02371.

## F.    Restructuring Efforts

### (1)    New Management

52.    On or about late November of 2012, Roland Kiser was brought on as Martifer USA's new Chief Financial Officer.  Mr. Kiser, a global business professional with a proven track record in the energy and financing sectors, brought with him over 20 years of senior executive experience.  Among many notable positions and accomplishments, Mr. Kiser has served as the General Manager and Chief Operating Officer of HSH Nordbank where he spearheaded the startup of U.S. operations for €151B German merchant bank and grew the U.S. unit to $1.3 billion in revenue and $550 million net profit before taxes.  Mr. Kiser facilitated the growth of HSH Nordbank's energy business to

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

17

become a $6 billion leader in renewable energy financing, funding more than 4.5 GW (gigawatts) of wind and solar projects.  Mr. Kiser has also formerly served as the Chief Operating Officer of UBS Americas and, further, the President and CEO of Kenyon Energy.

53.    Shortly after taking employment at the Companies, Mr. Kiser put his years of experience in the energy and financing sectors to work and commenced a holistic assessment of the Companies' entire U.S. business and operations.  To assist with such assessment, Mr. Kiser brought me on board as a consultant to the Companies.

54.    Based in part on our conclusion that accurate prediction of when the Companies' receivables will actually be received is exceedingly difficult, Mr. Kiser and I made the early assessment that the Loan was not properly structured to suit the Companies' operations.  In light of such determination and the relatively low margins associated with a pure engineering, procurement, and construction ("EPC") business, Mr. Kiser and I determined that the Company's EPC operations would need to be scaled down until the Loan was properly restructured or an alternative adequate working capital line could be secured.  Additionally, Mr. Kiser and I further concluded that Martifer USA needed to shift a portion of its focus away from EPC and towards a higher margin business which is referred to herein as "solar project development."

55.    Shortly after completing our assessment in January 2013 and obtaining board approval of our restructuring proposal in the following month, Mr. Kiser and I began implementing our restructuring plan by seeking to restructure the Loan with the Lender, cutting costs, and streamlining operations. The issue of restructuring the Loan was addressed between Mr. Kiser, myself and the loan officer of Cathay (Jane Ho) as early as Q1 2013, and several times thereafter, with some of the discussions also including the Group CFO of S.A (Filipe Santos).  The Lender responded that it saw no need to restructure the Loan at that point in time and wanted to defer such a discussion until a date closer to November 2013, when the Loan would mature.

**(2)    Reductions in Force and Organizational Restructuring**

56.    During the course of 2013, the Companies let go of 62% of their staff, reducing the number of their employees from 85 to a current total of 34.  Shortly thereafter, the Companies implemented use of sophisticated SAP accounting software and a new sales and project execution

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

18

1   process platform in an effort to better track and manage the companies' sales and project execution

2   platform, finances and risk management tools.

3        57.    By mid March of 2013, Mr. Kiser was named as Martifer USA's new CEO and I was

4   appointed the company's new CFO.  We both agreed to a 1 year contract to be reviewed March 10,

5   2014.   Since such time, Mr. Kiser and I have continued our restructuring of Martifer USA's

6   operations, including: hiring new teams to focus on sales, sales estimation, engineering, construction

7   management/operations; streamlining the finance and risk management department: and hiring a

8   new general counsel to oversee legal and compliance maters.  In summary, the restructuring efforts

9   included (but were not limited to):

10      • Conducted a comprehensive GAP Analysis, evaluating current strategy, the legacy
            project portfolio, finances/capital and operations. Identified key risks and
11          deficiencies. Reported to the board, assessing merits of either liquidating versus
            pursuing a turnaround.

12
13      • Implemented a three-phased turnaround plan to stabilize and restructure legacy
            matters, finances, growing revenue and shedding costs. Established a roadmap for
14          firm to grow into a world-class US-based end-to-end solar energy integrator.

15      • Reorganized the company in order to reduce costs and developed a rightsizing plan.
            Replaced dead wood with new managerial talent across all functions, while
16          improving efficiency, productivity and profitability by implementing new systems
            (SAP), streamlined processes and closed unproductive facilities and operations.

17      • Laid foundation for long-term strategic growth and identified untapped opportunities
            and markets with maximum potential. Positioned the firm to take on hundreds of
18          millions in future EPC and project development contracts. Organized all teams for
            maximum scalability and agility.

19

20  Attached hereto as **Exhibit 1** are charts showing the Companies' restructuring efforts, as well as the

21  current organizational chart.

22       58.    Further, Mr. Kiser and I rebuilt nearly dormant sales and generated a sustainable

23  pipeline to support the business in the US.  Martifer USA continues to be called on for the

24  engineering, procurement, and construction of large-scale commercial and utility photovoltaic

25  projects.  Most recently, Martifer USA executed a notice to proceed with a developer in North

26  Carolina for a 2.4 MW project with a contract value of $3.9 million.  In the 4th Quarter of 2013,

27  Martifer USA executed letters of intent with several entities representing 10.1 MW of solar projects

28  in Texas, New Mexico, California and North Carolina with anticipated revenues of $20.6 million.  In

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

ACTIVE 24550748v1

January 2014, Martifer USA executed letters of intent with developers in Rhode Island, North Carolina and Cayman Island representing 31.2 MW of solar project opportunities with anticipated revenues of $59.9 million. Martifer USA is further bidding on five project opportunities representing 427 MW of solar projects. The overall EPC project pipeline managed by Martifer USA currently exceeds a capacity of 1.0 GW of solar project opportunities. The project development pipeline currently includes 14 projects representing 188 MW capacity and a sales volume of approx. $280 million. Attached hereto as **Exhibit 2** is a chart of the project development pipeline. Although these projects require development capital (which has yet to be provided), they could earn a substantial development margin (in addition to the industry typical EPC margin) if properly executed.

### (3) Closure of Regional Offices

59. Martifer USA previously had additional regional offices in Denver, Colorado and Greenwich, Connecticut. The Greenwich, CT office was closed in July 2013 and the Denver, CO office was closed in September 2013.

### (4) Retention of Restructuring Consultant

60. In November 2013, Martifer USA retained James Wong and Armory Consulting Co. to provide restructuring and management advisory services. Mr. Wong assisted the Companies in numerous restructuring matters designed to preserve and maximize the value of the Companies and their assets, including, but not limited to, acting as a liaison with the Lender in negotiations regarding the Loan, developing financial projections, variance analysis or other reports, and evaluating and identifying the Companies' cost structure for potential expense savings.

61. Although each of the actions mentioned above produced significant positive results, the instant filing could not be avoided in the face of the Lenders' imminent threat of appointing a receiver. As a result, the Companies were required to seek the protection of this Court to obtain time to complete its reorganization strategy that will allow them to continue as going concerns for the benefit of all parties in interest.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

ACTIVE 24550748v1

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

**II.**

**CHAPTER 11 GOALS AND INDUSTRY OUTLOOK**

62.     Debtors intend to use the Chapter 11 process to evaluate all of their restructuring options and to maximize value for the stakeholders.  The overall goal of the Companies is to move from a pure EPC company approach to become a solar integrator by investing into project development opportunities, build them utilizing a subcontractor model and line up take-out financing (purchaser of projects).  By doing so, Debtors will enhance their participation as part of the solar value chain proposition resulting in additional fees otherwise unavailable to as an EPC.  Attached hereto as **Exhibit 3** is a chart demonstrating the Companies' desire to shift from pure EPC to solar project development.  At this point in time, Martifer USA holds a large deal pipeline consisting of project development and EPC contract opportunities in order to allow for such a strategy enhancement.  Numerous LOI's have been signed with customers, while several projects are in pre-LOI stadium.

63.     Debtors are cognizant that, while the solar energy industry is still in its nascent stage, many participants have closed or otherwise failed. A vast majority of these companies were manufacturers of solar cells or panels, investing heavily in research and development, and attempting to develop technological advances in increasing the efficiencies of solar energy conversion into electricity.  One example is Solyndra, a Fremont, California based company, which ceased operations and filed for bankruptcy in 2011.  Solyndra manufactured unique tubular solar panels designed to increase sunlight concentration, and thus, increase energy conversion.  However, global solar panel pricing has plummeted in recent years, due primarily to increased foreign capacity, thus making it economically unviable for manufacturers with high cost structures to compete in this dynamic industry.

64.     Martifer USA is not a manufacturer at all, but rather a general contractor engaged in the EPC of commercial and industrial installations, such as on white rooftops of shopping malls or office buildings and/or ground mounted solar systems.  As an EPC, Martifer USA is primarily engaged in the oversight of installing solar panel arrays which includes racking systems and inverters and, thus, does not have any inherent financial risk in the manufacturing or research and

21

development of the solar cells.  All solar panels are purchased based on the specific project requirements.  Martifer USA's risk is similar to that of a general contractor in any construction project, managing its EPC costs, coupled with minimal change orders and down-time, to ensure sufficient profit margin in each project.

65.    The US solar industry has significant growth potential, particularly with state and federal level incentives.  It is estimated that the penetration of the US market is only at its infancy stage.  As an established participant with an excellent reputation as an EPC contractor, Martifer USA believes it has tremendous opportunity to continue is growth, as evidenced by several hundreds of millions of project backlog.

66.    Just as in 2013, Asia, the United States and the emerging markets will drive global PV installation growth in 2014, IHS (a leading research specialist in the renewable sector) predicts that China will retain its position as the world's largest end market with more than 9 GW of installations, with Japan and the United States also both retaining their places next year at No. 2 and No. 3, respectively.  These three markets will install 2 GW more in 2014 than in the prior year.

67.    The Solar Energy Industry Association (SEIA) expects that the next four years will be marked by a new solar revolution in the U.S., this time driven by the distributed generation (DG) market.  Whereas residential and commercial solar markets have historically been effectively capped by the availability of state- and utility-level incentives, solar has now become cost-effective in some markets with only the federal investment tax credit (ITC), accelerated depreciation and net metering. This shift occurred first in California, followed by other states, where a meaningful number of installations have been completed without California Solar Initiative incentives, which has been that market's main driver since 2007.  Consequently, Martifer USA is primarily focusing on the DG segment of solar, followed by some installations in the utility scale market.

**III.**

**FIRST DAY MOTIONS**

A.    **Emergency Motion for Order Directing Joint Administration of Related Cases Pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015**

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

ACTIVE 24550748v1

68.     It is likely that numerous motions filed in Debtors' cases will concern both Debtors. Under these circumstances, Debtors believe the interest of Debtors, their estates, their creditors and other parties in interest would best be served by the joint administration of these chapter 11 cases for procedural purposes only.

69.     Further, joint administration will avoid otherwise unnecessary and expensive duplication of effort and papers caused by preparing and serving the same creditors with sets of differently captioned but otherwise identical papers.

70.     I do not believe that an actual conflict will arise between the two estates.

**B.    Motion Pursuant to 11 U.S.C. § 521, Fed. R. Bankr. P. 1007 and Local Rule 1007 for Order Extending Time to File Schedules and Statement of Financial Affairs**

71.     Debtors request an extension of the 14-day period to file their Schedules and Statement of Financial Affairs ("SOFA") to a 30-day period, without prejudice to Debtors' ability to request additional time should it become necessary.

72.     On the Petition Date, in partial satisfaction of the requirements of Bankruptcy Rule 1007, Debtors filed with this Court lists of creditors holding the 20 largest unsecured claims against Debtors' respective estates.  Due to the large number of pressing matters present in the early stages of these Chapter 11 Cases, Debtors anticipate that they will be unable to complete the Schedules and SOFA in the 14-day time period established under Bankruptcy Rule 1007(c).

73.     To prepare their Schedules and SOFA, Debtors must compile financial information from books, records, and documents relating to their assets, contracts and claims of creditors.  This information is voluminous and assembling the necessary information requires a significant expenditure of time and effort on the part of Debtors and their employees.  While Debtors, with the help of professional advisors, are working diligently and expeditiously on the preparation of the Schedules and SOFA, resources are limited.

74.     Creditors and other parties in interest will not be harmed by the proposed extension of the filing deadline because, even under the extended deadline, the Schedules and SOFA would be filed in advance of any bar date or other significant event in these Chapter 11 Cases.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

ACTIVE 24550748v1

75.    Accordingly, Debtors submit that, based upon the amount of information that must be assembled and compiled, the limited resources available and the other more pressing items that must be addressed at the inception of these Chapter 11 Cases, good and sufficient cause exists for granting the requested extension of time.  At present, Debtors anticipate that it will require at least 30 days to complete the Schedules and SOFA.  Debtors, therefore, request that the Court extend the filing period to and including February 20, 2014, without prejudice to Debtors' ability to request additional time should it become necessary.

**C.    Motion for an Order (1) Prohibiting Utility Providers From Altering, Refusing Or Discontinuing Service; (2) Authorizing Ordinary Course Payments to Utility Providers; (3) Deeming Utility Providers Adequately Assured of Future Performance; and (4) Establishing Procedures for Determining Requests for Additional Adequate Assurance (the "Utilities Motion")**

76.    In the normal course of business, Martifer USA has relationships with various utilities for, among other things, electricity, natural gas, water, telecommunications, sewage, trash removal and other similar services from numerous companies or divisions thereof (the "Utility Providers").  Martifer USA intends to continue to use the Utility Providers that are set forth on **Exhibit A** to the Utilities Motion.  Martifer USA estimates that its average monthly postpetition payments to the Utility Providers will aggregate approximately $7,500.

77.    Martifer USA seeks an order (1) prohibiting Utility Providers from altering, refusing or discontinuing service relationships or terms to Martifer USA except as set forth herein; (2) authorizing payment of ordinary course payments due to Utility Providers; (3) deeming Utility Providers adequately assured of future performance; and (4) establishing procedures for determining requests for additional adequate assurance.  Such relief is necessary because uninterrupted Utility Services are critical to Martifer USA's ability to sustain its operations.  Any interruption of Utility Services, even for a brief period, would severely disrupt Martifer USA's business operations, jeopardize the value of its assets and would be extremely harmful to its revenues and profits.

78.    Martifer USA believes it has and will have adequate cash to meet all of its necessary postpetition operating expenses on a current basis, including payments to the Utility Providers.  Debtor has specifically included in its budget amounts for payments to Utility Providers, including the payment of deposits consisting of sums equal to fifty percent (50%) of Martifer USA's estimated

ACTIVE 24550748v1

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

monthly costs for utility services for each of the Utility Providers (each sum, a "Utility Deposit"), based upon an average of Martifer USA's monthly costs for the six (6) months immediately preceding the Petition Date. In addition to seeking use of Lender's cash collateral, Martifer USA is seeking to obtain DIP financing as an additional form of payment and adequate protection to Utility Providers.

79.    Martifer USA cannot continue to operate without continued Utility Services. If any of the Utility Providers alter, refuse or discontinue service, even for a brief period, Martifer USA's business operations would be severely disrupted and they would be unable to maintain its business.

80.    Because uninterrupted Utility Services are vital to the continued operation of Martifer USA's business, and, consequently, to the success of its Chapter 11 Case, the relief requested herein is necessary and in the best interests of Debtor, its estate and its creditors. Such relief ensures that Debtor's business operations will not be disrupted.

I verify under penalty of perjury that the foregoing statement is true and correct to the best of my information, knowledge and belief.

Executed this 22nd day of January 2014.

_____

KLAUS BERNHART

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

25