BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        mmoore@foxrothschild.com
*[Proposed] Counsel for Martifer Solar USA, Inc.*
*and Martifer Aurora Solar, LLC*

Electronically filed January 23, 2014

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>MARTIFER SOLAR USA, INC., a California corporation,<br><br>Debtor. | Case No. 14-10357-abl<br><br>Chapter 11<br><br>**MOTION FOR INTERIM AND FINAL ORDER PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363 AND FED. R. BANKR. P. 4001(b) AND 4001(d): (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION; (II) GRANTING RELATED RELIEF; AND (III) SCHEDULING FINAL HEARING**<br><br>Hearing Date:    OST PENDING<br>Hearing Time:    OST PENDING |

Martifer Solar USA, Inc. ("Martifer USA") and Martifer Aurora Solar, LLC ("Aurora", and collectively with Martifer USA, the "Debtors"), debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), respectfully submit this motion (the "Motion") for entry of an interim order (the "Interim Order") and final order (the "Final Order") pursuant to sections 361, 362 and 363 of title 11 of the United States Code, §§ 101 *et. seq.* (the "Bankruptcy Code"), Rules 4001(b) and 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001(b) and 4001(c) of the Local Rules for the U.S. Bankruptcy

1

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

1  Court, District of Nevada ("Local Rules"): (i) authorizing and approving, among other things,

2  (a) Debtors to use the cash collateral of the Pre-Petition Lender (defined below), (b) Debtors to provide

3  adequate protection to the Pre-Petition Lender, (c) the form and manner of service of this Motion; and

4  (ii) scheduling interim and final hearings with respect to the relief requested herein.  The proposed

5  Interim Order is attached to this Motion as **Exhibit "1."**

6      Debtors seek authorization for the use of cash collateral in order to provide funding and liquidity

7  for the ongoing operation of Debtors' business and to fund the expenses of the Chapter 11 Case.

8  Debtors are in negotiations with the Pre-Petition Lender (defined below) regarding the use of cash

9  collateral but have not yet reached an agreement on the terms thereof (a "Cash Collateral Agreement").[1]

10  Debtors are seeking to use cash collateral pursuant to a Cash Budget, a copy of which (pertaining to the

11  first 13-week period following the Petition Date) is attached to this Motion as **Exhibit "2"** (the "Initial

12  Cash Budget").

13      In compliance with Bankruptcy Rules 4001(b)(1)(B) and 4001(d)(1)(B) and Local Rules

14  4001(b) and 4001(c), Debtors provide the following additional information regarding the proposed use

15  of cash collateral:[2]

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
|---|---|
| ¶ D | **Entity with Interest in Cash Collateral:** Cathay Bank (the "Pre-Petition Lender"). |
| | |

---

[1] Capitalized terms used, but not defined, herein shall have the meaning ascribed to such terms in the Interim Order.

[2] The following is a summary of the proposed Interim Order.  Nothing in this summary alters or amends the terms of the proposed Interim Order or any Cash Collateral Agreement, and to the extent of any conflict between this summary and the Interim Order or any Cash Collateral Agreement, the Interim Order (or any Cash Collateral Agreement, as applicable) shall control.

[3] The proposed Interim Order is attached to this Motion as **Exhibit "1."**

[4] All provisions listed below as being contained in the proposed Interim Order are proposed to remain in effect if interim approval is granted, but final relief is denied, as provided under Bankruptcy Rule 4001(b)(2) unless otherwise noted.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

ACTIVE 24564346v1 01/23/2014

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
|---|---|
| ¶¶ 2-3 | Purposes for Use of Cash Collateral: From the Petition Date through the Termination Date (as defined below), Debtors shall be permitted to use the Pre-Petition Lender's Cash Collateral (as defined in Bankruptcy Code section 363(a)), including, without limitation, Cash Collateral that consists of proceeds of the Pre-Petition Lender's collateral existing as of the Petition Date (the "Cathay Collateral"). Debtors shall have no right to use the Pre-Petition Lender's Cash Collateral after the occurrence and during the continuance of any Event of Default (as defined below), except as provided with respect to the Carve-Out.

Subject to the Cash Budget (as defined below), Debtors shall be authorized to use Cash Collateral for (i) funding expenses associated with operating Debtors' businesses, (ii) making adequate protection payments to the Pre-Petition Lender, (iii) paying expenses incurred for the administration of the Chapter 11 Case, including paying compensation of professional fees and expenses, (iv) paying contractual obligations, consistent with the Final Order, and (v) repaying borrowings under any debtor-in-possession financing ("DIP Financing").

Under no circumstances shall any of the Pre-Petition Lender's Cash Collateral be used to pursue any action or joinder in any action, counter-claim, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, determination or similar relief (including conducting formal or informal discovery in connection therewith) (a) challenging the legality, validity, amount, priority, perfection or enforceability (as the case may be) of any claim of the Pre-Petition Lender against Debtors or any lien of the Pre-Petition Lender against Debtors' property (collectively, the "Pre-Petition Lender's Claims"); (b) invalidating, setting aside, avoiding or subordinating, in whole or in part, any of the Pre-Petition Lender's Claims; (c) seeking authority to use any of the Pre-Petition Lender's Cash Collateral without the Pre-Petition Lender's consent, other than as provided herein; or (d) challenging the legality, validity, amount, priority, perfection or enforceability (as the case may be) of any claim of the Pre-Petition Lender against Borrowers under the Credit Agreement; provided, however, that should a statutory committee be appointed under Bankruptcy Code section 1102, such committee may use, subject to the Cash Budget, up to $25,000 of Pre-Petition Lender's Cash Collateral, solely to investigate the Pre-Petition Lender's Claims; and provided further, however, that any challenge regarding the Pre-Petition Lender's Claims asserted by such committee(s) must be commenced on or before the earlier to occur of (x) twenty (20) days after the appointment of such committee; or (y) sixty (60) days after the Petition Date. |
| ¶¶ 4-5 | Cash Budget: All use of the Pre-Petition Lender's Cash Collateral shall be subject to compliance with, in addition to the Interim Order, an approved budget that is reasonably acceptable in form and substance to the Pre-Petition Lender (as amended or modified from time to time, the "Cash |

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

ACTIVE 24564346v1 01/23/2014

3

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
|---|---|
| | Budget"), provided that the Pre-Petition Lender's consent shall not be required for the Initial Cash Budget, which instead shall deemed to be approved in accordance with the Interim Order.  The Cash Budget shall reflect Debtors' (a) budgeted cash receipts (including as a result of the receipt of proceeds from any DIP Financing advances) for the three (3) calendar months or thirteen (13) calendar weeks following the Petition Date, and (b) anticipated disbursements (including payments required under the terms of any DIP Financing) for each of the three (3) calendar months or thirteen (13) calendar weeks following the Petition Date; provided, however, that compliance with the Cash Budget shall be deemed satisfied if the actual aggregate expenditures for every four-week period (i.e. post-petition weeks one through four, weeks five through eight, etc.) do not exceed by more than twenty percent (20%) the aggregate budgeted amount for such four-week period as set forth in the Cash Budget.<br><br>To the extent that the full amount of the expenses budgeted for a particular four-week period under the Cash Budget is not disbursed during such four-week period, the unused balance shall be added to the amount of budgeted expenses for ensuing four-week periods and the Cash Budget shall be deemed to be amended (and approved) to reflect the same, such that Debtors may use such unused budgeted amounts in subsequent four-week periods in addition to originally budgeted amounts for such four-week periods.<br><br>The Initial Cash Budget is attached to this Motion as **Exhibit "2."** The Cash Budget may be modified with the written consent of Debtors and the Pre-Petition Lender, without the need for Bankruptcy Court approval.] |
| ¶ 8 | Term: The Debtors' authorization to use the Pre-Petition Lender's Cash Collateral shall be effective through the earliest of (a) twelve (12) months from the Petition Date, unless (x) the confirmation hearing for Debtors' chapter 11 plan has commenced on or before such date, in which case the foregoing twelve (12) month period shall be extended automatically to fifteen (15) months from the Petition Date without action or approval by Debtors, the Pre-Petition Lender or the Bankruptcy Court, or (y) a date as otherwise agreed to in writing by Debtors and the Pre-Petition Lender (for which no Bankruptcy Court approval will be required), (b) the date any chapter 11 plan confirmed in the Chapter 11 Cases becomes effective, or (c) the occurrence of an Event of Default (defined below) that is no longer subject to cure (each, a "Termination Date").   Notwithstanding the occurrence of a Termination Date, upon Debtors' receipt of sufficient funds, Debtors shall be entitled to continue to use the Pre-Petition Lender's Cash Collateral to pay (i) amounts that fall within the scope of the Carve-Out, and (ii) all expenses set forth in and in accordance with the Cash Budget for the |

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
|---|---|
| | period through the Termination Date. |
| ¶ 6 | **Adequate Protection for Pre-Petition Lender**: As adequate protection under Bankruptcy Code sections 361, 362, 363 and 552 for any diminution in the value (as it existed on the Petition Date) of Pre-Petition Lender's interest in the Cathay Collateral (any such diminution to be determined by agreement or order of the Bankruptcy Court after notice and a hearing) caused by the imposition of the automatic stay and/or Debtors' use of Cash Collateral and other Collateral (a "Value Diminution"), the Pre-Petition Lender shall receive: |
| | (a)  monthly, on or before the first day of each month and continuing during the pendency of the Chapter 11 Cases, adequate protection payments made by Debtors to the Administrative Agent for the benefit of the Pre-Petition Lender in an amount equal to the non-default contractual rate of interest applicable from time to time to amounts outstanding under the Credit Agreement (the "Adequate Protection Payments"), and the automatic stay shall be vacated and modified to the extent necessary to permit Debtors to make such Adequate Protection Payments and the Pre-Petition Lender to apply them against the Pre-Petition Lender's Claims; |
| | (b)  replacement liens to secure the amount of any Value Diminution (the "Replacement Liens"), which Replacement Liens shall: (i) be subject and junior only to the Carve-Out (defined below), and any Prior Liens,[6] (ii) attach to the Cathay Collateral as of the Petition Date and any other assets of Debtors that are subject to a valid and perfected lien as of the Petition Date, Avoidance Actions, any other previously unencumbered assets of Debtors, and any proceeds of the foregoing, and (iii) be in addition to the Pre-Petition Lender's Claims and liens. |
| | (c)  to the extent permitted by Bankruptcy Code section 507(b), a superpriority claim (the "Pre-Petition Lender's Superpriority Claim") against Debtors' estates, subject and junior only to the Carve-Out. |
| ¶ 7 | **Carve-Out**: All claims and liens of the Pre-Petition Lender, including, without limitation, the Replacement Liens and the Pre-Petition Lender's Superpriority Claims, shall be subject to a carve-out (the "Carve-Out") for (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to |

---

[6] "Prior Liens" shall consist of any and all valid and duly perfected liens, mortgages or other security interests in the Collateral in existence and senior to the interests of Pre-Petition Lender as of the Petition Date.

ACTIVE 24564346v1 01/23/2014

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
|---|---|
| | the Office of the United States Trustee pursuant to 28 § U.S.C. 1930, and (ii) only to the extent amounts are not available under the Cash Budget, an amount not exceeding two million dollars ($2,000,000) in the aggregate, which amount may be used after the occurrence and during the continuation of an Event of Default, to pay the fees and expenses of professionals retained by Debtors and any Committee and allowed (or allowable) by the Bankruptcy Court (as to which allowed or allowable fees and expenses the Pre-Petition Lender waives any right to seek disgorgement); provided, however, that (x) Debtors shall be permitted to pay compensation and reimbursement of expenses allowed, allowable or otherwise authorized by the Bankruptcy Court and payable under Bankruptcy Code sections 330 and 331 in accordance with the Cash Budget; (y) the Carve-Out shall not be reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to the extent ultimately allowed or allowable by the Bankruptcy Court) prior to the occurrence of an Event of Default in respect of which the Carve-Out is invoked; and (z) the Pre-Petition Lender waives any right to seek disgorgement thereof; and provided, further, that nothing herein shall be construed to impair the ability of the Pre-Petition Lender to object to the reasonableness of any of the fees, expenses, reimbursement or compensation sought by the professionals retained by Debtors or any Committee. |
| ¶ 9 | Events of Default: Upon written notice from the Pre-Petition Lender, any of the following is an event of default ("Event of Default") under the Interim Order (for purpose of items (i) through (vii) by way of a final order, the effectiveness of which has not been stayed): (i) appointment of a chapter 11 trustee with respect to either of the Chapter 11 Cases; (ii) appointment of an examiner with expanded powers with respect to the Chapter 11 Case; (iii) conversion of either of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (iv) dismissal of either of the Chapter 11 Case; (v) the Bankruptcy Court terminating Debtors' authority to operate its business; (vi) reversal, vacatur or stay of the effectiveness of the Interim Order (which must be in a form reasonably acceptable to the Pre-Petition Lender); (vii) the Interim Order being amended, supplemented or otherwise modified without the prior written consent of the Pre-Petition Lender; (viii) any use of Cash Collateral to make a payment that is not in compliance with the Cash Budget; (ix) breach by Debtors of any other provision of the Interim Order or Final Order and such breach remains uncured for a period of ten (10) days after written notice of such breach is actually received by Debtor; or (x) the filing of any action or joinder in any action, counter-claim, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, determination or similar relief (a) challenging the legality, validity, priority, perfection or enforceability (as the case may be) of the Pre-Petition Lender's Claims; or (b) invalidating, setting aside, avoiding or subordinating, in whole or in |

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
|---|---|
| | part, any of the Pre-Petition Lender's Claims. |
| *Types of Provisions Identified in Bankruptcy Rules 4001(c)(1)(B)(i) through (xi)[8]* | |
| ¶ 6 | **(i) Grant of priority/lien under 11 U.S.C. § 364(c) or (d)**: Not under sections 364(c) or (d), but Debtors will grant the Pre-Petition Lender the Replacement Liens and Pre-Petition Lender's Superpriority Claim as part of the proposed adequate protection under Bankruptcy Code sections 361, 362, 363 and 552. |
| ¶ 6 | **(ii) Adequate protection for pre-petition claims**: Yes—*see* above. |
| | **(iii) Determination re: pre-petition lien/claim**: None. |
| ¶ 6 | **(iv) Waiver/modification of the automatic stay**: The automatic stay is vacated and modified to the extent necessary to permit Debtors to make the Adequate Protection Payments and the Pre-Petition Lender to apply them against the Pre-Petition Lender's Claims. |
| N/A | **(v) Waiver/modification of rights re: chapter 11 plan, cash collateral or post-petition financing**: None. |
| ¶ 8 | **(vi) Confirmation/disclosure statement deadlines**: A Termination date will occur unless the confirmation hearing for Debtors' chapter 11 plan has commenced within twelve (12) months after the Petition Date, subject to an automatic extension through the date that is fifteen (15) months after the Petition Date if the confirmation hearing has commenced within twelve (12) months after the Petition Date. |
| N/A | **(vii) Wavier/modification of lien rights under non-bankruptcy law**: None |
| N/A | **(viii) Release of estate cause of action**: None. |
| N/A | **(ix) Indemnification**: None. |

---

[8] Although Bankruptcy Rule 4001(c)(1)(B) applies to obtaining post-petition credit under Bankruptcy Code section 364, Debtors are identifying these types of provisions to the extent applicable to the Interim Order or a Cash Collateral Agreement in an abundance of caution to ensure compliance with Bankruptcy Rule 4001(d)(1)(B) and Local Rule 4001(c)(3).

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

ACTIVE 24564346v1 01/23/2014

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
|---|---|
|  |  |
| N/A | **(x) 506(c) waiver**: None. |
|  |  |
| ¶ 6 | **(xi) Lien/claim on avoidance actions**: Yes—see above. |

This Motion is made and based upon the following memorandum of points and authorities, the Omnibus Declaration of Klaus Bernhart (the "Omnibus Declaration"), filed in support of Debtors' First Day Motions on January 22, 2014, the Declaration of Klaus Bernhart filed concurrently herewith in support of this Motion (the "Bernhart Declaration"), the papers and pleadings on file with the Court in this Chapter 11 Case, and any oral arguments the Court may entertain at the hearing on the Motion.

DATED this 23rd day of January, 2014.

**FOX ROTHSCHILD LLP**

By    */s/ Brett Axelrod*
       BRETT A. AXELROD, ESQ.
       Nevada Bar No. 5859
       MICAELA RUSTIA MOORE, ESQ.
       Nevada Bar No. 9676
       3800 Howard Hughes Parkway, Suite 500
       Las Vegas, Nevada 89169
       *[Proposed] Counsel for Martifer Solar USA, Inc.*
       *and Martifer Aurora Solar, LLC*

**MEMORANDUM OF LAW**

**POINTS AND AUTHORITIES**

**I.**

**JURISDICTION**

1.      This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are Bankruptcy Code sections 361, 362 and 363, Bankruptcy Rules 4001(b) and 4001(d), and Local Rules 4001(b) and (c).

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

8

## II.

## FACTUAL BACKGROUND

**A.**     **General Background.**

4.     On January 21, 2014 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.     Debtors are continuing in possession of their respective property and are operating and managing their respective businesses, as debtors in possession, pursuant to Bankruptcy Code sections 1107 and 1108.  See generally Chapter 11 Case Docket.

6.     No request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed.  See id.

7.     The factual background relating to Debtors' commencement of the Chapter 11 Cases is set forth in detail in the Omnibus Declaration and is incorporated for all purposes herein by this reference.

**B.**     **Debtors' Need to Use Cash Collateral.**

8.     As described in greater detail in the Omnibus Declaration and the Bernhart Declaration, the Pre-Petition Lender holds a lien on all of Debtors' personal property and the proceeds thereof as of the Petition Date pursuant to the CSA.  As a result, the Pre-Petition Lender asserts an interest in all cash held by Debtors as of the Petition Date.  Now that Debtors have commenced their Chapter 11 Cases, Debtors require the consent of the Pre-Petition Lender or approval of the Court to use the Pre-Petition Lender's cash collateral.

9.     Pending approval of DIP Financing, Debtors do not have any other source of cash to fund operations that is not the Pre-Petition Lender's cash collateral.  Moreover, although Debtors are negotiating DIP Financing in order to provide additional post-petition liquidity, Debtors still primarily need to rely on the use of cash collateral to maintain their operations and remain current on expenses.  See Initial Cash Budget.  As set forth in the Initial Cash Budget, Debtors project that they will need to use more than $3.8 million in case (exclusive of projected DIP Financing borrowings) during the first thirteen (13) weeks following the Petition Date in order to meet their operating expenses and make adequate protection payments to the Pre-Petition Lender.  The Initial Cash Budget is based on Debtors'

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada  89169
(702) 262-6899

ACTIVE 24564346v1 01/23/2014

1  internally prepared projections—if actual results do not match projections, then Debtors' need to use

2  cash collateral and/or borrow under the DIP Financing may differ from the amounts set forth in the

3  Initial Cash Budget.  In addition, Debtors estimate that they will incur approximately $750,000 in

4  expenses associated with the Chapter 11 Cases during this same period (which are contemplated to be

5  funded with DIP Financing).  Thus, Debtors have an urgent and immediate need to use cash collateral.

6  With this necessity in mind, Debtors have attempted to negotiate a Cash Collateral Agreement with the

7  Pre-Petition Lender, but have not yet reached agreement on the terms thereof.

8  **III.**

9  **RELIEF REQUESTED**

10  By this Motion, Debtors seek authorization to use the Pre-Petition Lender's Cash Collateral and

11  provide adequate protection to the Pre-Petition Lender on the terms set forth in the Interim Order

12  pursuant to a Cash Budget.  The Initial Cash Budget (pertaining to the first 13-week period) is attached

13  to this Motion as **Exhibit "2."**

14  Pursuant to Bankruptcy Rule 4001(b)(2), Debtors are seeking authorization to use cash

15  collateral pending a final hearing on the Motion in order to avoid immediate and irreparable harm to

16  the estate.  In order to keep Debtors' business operational, Debtors must be able to pay their

17  subcontractors, satisfy other ongoing working capital needs and expenses of operation, including,

18  without limitation, employee payroll expenses, and fund the costs of administering Debtors' estates,

19  including without limitation, fees assessed by the Office of the United States Trustee and the Clerk of

20  Court and fees and expenses of estate professionals.  Ensuring uninterrupted payment to subcontractors

21  is particularly crucial because they have the ability to assert mechanics' liens against the Debtors'

22  projects, which in turn could severely and adversely impact Debtors' collection of revenue.

23  As indicated by the Initial Cash Budget, Debtors' projects that they will need to use more than

24  $800,000 in cash during the first five (5) weeks after the Petition Date (exclusive of projected DIP

25  Financing borrowings) in order to fund its ongoing operational expenses and make the first adequate

26  protection payment to the Pre-Petition Lender.  Accordingly, timely approval of the proposed use of

27  cash collateral is critical to preserving the going concern value of Debtors' estates from the outset of

28  the Chapter 11 Cases.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

10

1    In addition, Debtors are requesting that the Court set a final hearing on the proposed use of cash

2    collateral.  Debtors request that the Court set the final hearing within thirty (30) days of the Petition

3    Date, subject to availability on the Court's calendar.  Obtaining certainty regarding Debtors' ability to

4    use cash collateral is a key step for Debtors to stabilize operations as chapter 11 debtors in possession,

5    which will then enable Debtors and their professionals to focus complete attention on the

6    implementation of Debtors' plan of reorganization.

7    ### IV.

8    ### LEGAL ARGUMENT

9    **A.    Debtors' Use of Cash Collateral and Proposed Adequate Protection of the Pre-Petition
10    Lender's Interest Pursuant to the Interim Order Complies With Bankruptcy Code
       Sections 361, 362 and 363.**

11

12    As debtors in possession, Debtors are authorized to operate their respective businesses under

13    the Bankruptcy Code.  See 11 U.S.C. § 1108.  The Bankruptcy Code provides that a debtor in

14    possession may use cash collateral only with a secured creditor's consent or if the Court, after notice

15    and a hearing, authorizes such use.  See 11 U.S.C. § 363(c)(2).  Absent consent, courts look to whether

16    a secured creditor has "adequate protection" of its interest in cash collateral as a condition to

17    authorizing its use.  See, e.g., 11 U.S.C. § 363(e); see also United Savings Ass'n v. Timbers of Inwood

18    Forest Ass'n, 484 U.S. 365, 369-73 (1988) (the "interest in property" entitled to protection is "the

19    value of the collateral" that secures the claim).  In addition, section 362(d)(1) enables a party with an

20    interest in property of the estate (such as cash collateral) to obtain relief from the automatic stay if

21    there is a lack of adequate protection.  11 U.S.C. § 362(d)(1).

22    Bankruptcy Code section 361 provides some examples of adequate protection, including

23    payment of cash or periodic cash payments and the grant of additional or replacement liens.

24    See 11 U.S.C. § 361.  However, the concept of adequate protection is not limited to these specific

25    examples—Bankruptcy Code section 361(3) makes it clear that adequate protection can take any form

26    so long as it will result in the realization of "the indubitable equivalent of [the secured creditor's]

27    interest in such property."  11 U.S.C. § 361(3).

28    The legislative history of section 361 provides further reinforcement for the broad flexibility

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

11

that bankruptcy courts have in deciding what constitutes adequate protection on a case-by-case basis:

> This section specifies the means by which adequate protection may be provided. It does not require the court to provide it. To do so would place the court in an administrative role. Instead, the trustee or debtor-in-possession will provide or propose a protection method. If the party that is affected by the proposed action objects, the court will determine whether the protection provided is adequate. The purpose of this section is to illustrate means by which it may be provided and to define the contours of the concept.

H.R. Rep. No. 95-595, at 338, 95th Cong., 1st Sess. (1977); see also Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-97 (10th Cir. 1987) (same).

Pursuant to Bankruptcy Code section 507(b), if a party is provided with adequate protection and, notwithstanding such protection, the party has a claim allowable under section 507(a)(2), then such claim shall have priority over every other claim allowable under section 507(a)(2).

Here, the proposed Interim Order provides for the Pre-Petition Lender to be protected by several forms of adequate protection, including Adequate Protection Payments, Replacement Liens, and the Pre-Petition Lender's Superpriority Claim. Moreover, the Pre-Petition Lender is further protected by a substantial equity cushion of not less than 20% and likely significantly more than that according to various valuation methods. See Wong Declaration. Due to the nature of Debtors' businesses, the primary source of value is the collection of various receivables, which in turn depend on completing projects and satisfying various conditions. See id. Therefore, the best way to preserve value for the benefit of the Pre-Petition Lender (and all other constituents of the estates) is for Debtors to continue to operate, which they cannot do without the use of cash collateral. See Omnibus Declaration. See id. Indeed, as noted above, if Debtors are unable to fund payments to subcontractors and other vendors, their ability to collect revenues will be severely and adversely affected. See id. Finally, the anticipated DIP Financing will further protect the interests of the Pre-Petition Lender because it will provide new money to fund operational shortfalls and the administrative expenses of the Chapter 11 Cases yet remain junior to the interests of the Pre-Petition Lender.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

12

Therefore, because the proposed Interim Order complies with the requirements of the Bankruptcy Code, the Court should authorize Debtors to use cash collateral and provide adequate protection to the Pre-Petition Lender in accordance therewith.

**B.    Debtors' Decision to Enter into the Cash Collateral Agreement Is Supported by Sound Business Judgment.**

Courts generally give broad deference to the business decisions of a debtor.  See, e.g., Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1987).

Here, Debtors' request to use cash collateral pursuant to the proposed Interim Order represents a reasonable exercise of business judgment.  As demonstrated by the Initial Cash Budget, Debtors have an immediate need for the use of cash collateral in order to fund its operations and the expenses of the Chapter 11 Cases.  Without the use of cash collateral, Debtors would not be able to fund operations and proceed with a reorganization.  Instead, Debtors would be faced with the potential for administrative insolvency followed by a liquidation.  Given the choice between these two alternatives, Debtors are prudently attempting to negotiate a Cash Collateral Agreement with the Pre-Petition Lender, and have proposed the terms set forth in the Interim Order to ensure that Debtors would have the necessary funding for the Chapter 11 Cases.  Therefore, the Court should approve Debtors' decision to use cash collateral pursuant to the proposed Interim Order as an exercise of sound business judgment.

**D.    The Court Should Schedule Interim and Final Hearings On This Motion Pursuant To Bankruptcy Rule 4001(b)(2).**

Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion for authorization to use cash collateral may be commenced not earlier than fourteen (14) days after service of the motion.  Upon request, however, the Bankruptcy Court is empowered to conduct an expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

Pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 9006, Debtors request that the Court conduct an expedited interim hearing on the Motion (the "Interim Hearing") and, after the entry of the

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

13

1    Interim Order, allow Debtors to use cash collateral in accordance therewith.  Debtors have an urgent

2    and immediate need for cash to fund chapter 11 administration expenses and operations, as set forth in

3    the Initial Cash Budget.  In particular, Debtors must be able to continue to make weekly payments to its

4    subcontractors, or otherwise risk a severe and adverse impact on project revenue collections.  The Pre-

5    Petition Lender asserts an interest in all of Debtors' cash, and Debtors do not have any source of cash

6    funding (other than DIP Financing under negotiation, which is not sufficient in and of itself to satisfy

7    Debtors' post-petition expenses).  Debtors submit that the terms of the proposed Interim Order are fair,

8    reasonable and in the best interests of Debtors' estates.  Therefore, entry of the Interim Order is proper

9    under Bankruptcy Rule 4001(b)(2).

10           Also pursuant to Bankruptcy Rule 4001(b)(2), Debtors request that the Court schedule the final

11   hearing on the Motion within thirty (30) days of the Petition Date, subject to availability on the Court's

12   calendar.  Obtaining certainty regarding Debtors' ability to use cash collateral is a key step for Debtors

13   to stabilize operations as chapter 11 debtors in possession, which will then enable Debtors and their

14   professionals to focus complete attention on the implementation of Debtors' plan of reorganization.

**V.**

**NOTICE**

17           Notice of this Motion is being given by electronic mail, facsimile or overnight delivery to the

18   following parties or their counsel:  (a) the Office of the United States Trustee for the District of

19   Nevada; (b) counsel to Pre-Petition Lender; (c) the US Parent; (d) the Internal Revenue Service; (e) all

20   parties listed on the List of Creditors Holding the 20 Largest Unsecured Claims; and (f) all other

21   parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief

22   requested, Debtors respectfully submit that no further notice is necessary.

**VI.**

**CONCLUSION**

25           WHEREFORE, based upon all the foregoing, as set forth in this Memorandum, the Motion, the

26   Omnibus Declaration, the Bernhart Declaration and all other papers, documents, and other evidence

27   submitted in support of the Motion, Debtors respectfully request that the Court grant the Motion in its

28   entirety and: (1) approve Debtors' use of cash collateral on an interim basis pending a final hearing on

14

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

ACTIVE 24564346v1 01/23/2014

the Motion; (2) enter the Interim Order, in substantially the form attached hereto as **Exhibit "1;"** (3)

grant the Pre-Petition Lender the Replacement Liens, Pre-Petition Lender's Superpriority Claim and

other forms of adequate protection as provided in the Interim Order; (4) schedule a final hearing on this

Motion; (5) in conjunction with the final hearing, enter the Final Order approving Debtors' use of cash

collateral on a final basis; and (6) grant to Debtors such other relief as the Court deems necessary and

appropriate.

DATED this 23rd day of January, 2014.

**FOX ROTHSCHILD LLP**

By    */s/Brett Axelrod*
     BRETT A. AXELROD, ESQ.
     Nevada Bar No. 5859
     MICAELA RUSTIA MOORE, ESQ.
     Nevada Bar No. 9676
     3800 Howard Hughes Parkway, Suite 500
     Las Vegas, Nevada 89169
*[Proposed] Counsel for Martifer Solar USA, Inc.*
*and Martifer Aurora Solar, LLC*

ACTIVE 24564346v1 01/23/2014

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

EXHIBIT "1"

**PROPOSED INTERIM ORDER**

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        mmoore@foxrothschild.com
*[Proposed] Counsel for Martifer Solar USA, Inc.*
*and Martifer Aurora Solar, LLC*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 14-10357-abl |
| MARTIFER SOLAR USA, INC., a California corporation, | Chapter 11 |
| Debtor. | **INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363 AND FED. R. BANKR. P. 4001(b) AND 4001(d): (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION; (II) GRANTING RELATED RELIEF; AND (III) SCHEDULING FINAL HEARING** |
| | Hearing Date:    OST PENDING<br>Hearing Time:    OST PENDING |

The Court, having reviewed and considered the Motion (the "Motion") filed by Martifer Solar

USA, Inc. ("Martifer USA") and Martifer Aurora Solar, LLC ("Aurora", together with Martifer USA,

"Debtors" or the "Companies"), for entry of an interim order (the "Interim Order") and final order

ACTIVE 24564346v1 01/23/2014                                        1

(the "Final Order") pursuant to sections 361, 362 and 363 of title 11 of the United States Code, §§ 101 *et. seq.* (the "Bankruptcy Code"), Rules 4001(b) and 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001(b) and 4001(c) of the Local Rules for the U.S. Bankruptcy Court, District of Nevada ("Local Rules"): (i) authorizing and approving, among other things, (a) Debtors to use the cash collateral of Cathay Bank (the "Pre-Petition Lender"), (b) Debtors to provide adequate protection to the Pre-Petition Lender, (c) the form and manner of service of the Motion; and (ii) scheduling interim and final hearings with respect to the relief requested therein; and it appearing that the relief requested is in the best interests of Debtors' estates, their creditors and all other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed and considered all other pleadings and evidence submitted by the parties in connection with the Motion; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual grounds set forth in the Motion establish just cause for the relief granted herein; and the Court having considered the oral arguments of counsel at the hearings held on January 28, 2014; and the Court having made findings of fact and conclusions of law on the record, which (to the extent not expressly set forth below) are incorporated herein pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Bankruptcy Rule 7052; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

**I.      Background, Jurisdiction and Notice.**

A.      On January 21, 2014 (the "Petition Date"), Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Each of the Debtors is continuing to operate its business as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee, examiner, or statutory committee has been appointed in this case.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Debtors have complied with the requirements of Bankruptcy Rules 4001(b) and 4011(d), and Local Rules 4001(b), 4001(c) and 9006, requiring, among other things, that the Interim Hearing be held on less than twenty-one (21) days notice by serving the Motion and providing notice of the Interim Hearing by facsimile or overnight mail to: (i) the U.S. Trustee; (ii) all parties listed on the List of Creditors Holding the 20 Largest Unsecured Claims; (iii) the U.S. Parent (defined below); (iv) the Pre-Petition Lender; (v) the Internal Revenue Service; and (vi) all other parties requesting notice pursuant to Bankruptcy Rule 2002.  Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rule 4001 in all respects.

## II.    Findings Regarding the Use of Cash Collateral Based on the Record at the Interim Hearing.

D.    On November 15, 2013, the Pre-Petition Lender originated a working-line of credit for the benefit of Debtors, allowing them to draw up to a maximum principal amount of $12 million (the "Cathay Loan").  The Cathay Loan is evidenced in part by a Promissory Note dated November 15, 2012 (the "Cathay Note").  The Cathay Loan is generally secured by (i) Martifer USA's personal property described in that certain Commercial Security Agreement dated November 15, 2012, executed by Martifer USA in favor of the Pre-Petition Lender ("CSA 1"), and (ii) Aurora's personal property described in that certain Commercial Security Agreement dated November 15, 2012, executed by Aurora in favor of the Pre-Petition Lender ("CSA 2" and together with CSA 1, individually and collectively referred to as the "CSA").  The collateral for the Cathay Loan pursuant to the CSA is referred to herein as the "Cathay Collateral".

E.    Martifer Solar, Inc. (the "US Parent"), the direct parent of Martifer USA, executed a Commercial Guaranty dated November 15, 2012 in favor of the Pre-Petition Lender, guaranteeing the indebtedness of Debtors owing to the Pre-Petition Lender as described therein ("Guaranty 1"); likewise, Martifer Solar, S.A. ("S.A.", and, together with the US Parent, the "Guarantors"), executed a

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

Commercial Guaranty dated November 15, 2012 in favor of the Pre-Petition Lender guaranteeing Debtors' indebtedness to the Pre-Petition Lender as described therein ("Guaranty 2" and together with Guaranty 1, individually and collectively referred to as the "Guaranty"). (The Cathay Note, the CSA, the Guaranty, and all related Cathay Loan documents are collectively, the "Loan Documents.")

F.     The Pre-Petition Lender has asserted that the Debtors and the Guarantors have defaulted in their obligations to the Pre-Petition Lender under the Loan Documents, as more particularly described in the default and demand letter delivered to Martifer USA on or about August 19, 2013 (all such asserted defaults are collectively, the "Existing Defaults"). As a result of the Existing Defaults, the Pre-Petition Lender has asserted that the outstanding indebtedness under the Cathay Loan Documents has become immediately due and payable to the Pre-Petition Lender.

G.     The Loan Documents further provided a Loan maturity date of November 30, 2013. The Pre-Petition Lender has asserted that the failure to pay the outstanding Loan balance by such date constituted Debtors' and Guarantors' further defaults under the Loan Documents.

H.     As of the Petition Date, the outstanding balance of the Loan is approximately $6.4 million.

I.     On January 21, 2014 (the "Petition Date"), Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

J.     During the Chapter 11 Cases, Debtors need to use cash collateral (as defined in Bankruptcy Code section 363) in which the Pre-Petition Lender asserts an interest (the "Pre-Petition Lender's Cash Collateral").

K.     Debtors have an immediate and critical need to use the Pre-Petition Lender's Cash Collateral. Debtors' ability to use the Pre-Petition Lender's Cash Collateral is critical to their ability to continue as a going concern during the course of the Chapter 11 Cases.

L.     An initial 13-week Cash Budget through the week ended April 14, 2014 (the "Initial Cash Budget") is attached to the Motion as **Exhibit "2."** Debtors' ability to use cash collateral under the terms of this Interim Order in accordance with the Initial Cash Budget is vital to the preservation

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

1    and maintenance of the going concern value of Debtors' estates and to Debtors' successful

2    reorganization.  Consequently, without the ability to use cash collateral to the extent authorized

3    pursuant to this Interim Order, Debtors and the estates would suffer immediate and irreparable harm.

4          M.     The terms of this Interim Order are fair and reasonable under the circumstances.  The

5    Debtors' proposed use of cash collateral pursuant to the terms of this Interim Order reflects Debtors'

6    sound exercise of prudent business judgment consistent with its fiduciary duties.

7          N.     The adequate protection to be provided pursuant to this Interim Order, including, without

8    limitation, the Replacement Liens and the Pre-Petition Lender's Superpriority Claim, is consistent and

9    in compliance with the Bankruptcy Code, including sections 361, 362 and 363 thereof.

10         O.     Good cause has been shown for immediate entry of this Interim Order pursuant to

11   Bankruptcy Rules 4001(b)(2) and 4001(d), and, to the extent it applies, Bankruptcy Rule 6003, as the

12   Court finds that entry of this Interim Order is necessary to avoid immediate and irreparable harm to

13   Debtors and the estates.  Entry of this Interim Order is in the best interest of Debtors, its estates and

14   creditors.

15         P.     Based on the foregoing, and upon the record made before this Court at the Interim

16   Hearing, and good and sufficient cause appearing therefor:

17   **III.    Disposition.**

18         1.     The Motion is granted on an interim basis on the terms and conditions set forth in this

19   Interim Order.  This Interim Order shall become effective immediately upon its entry.

20         2.     From the Petition Date through the Termination Date (as hereinafter defined), Debtors

21   shall be permitted to use the Pre-Petition Lender's Cash Collateral according to the terms of this Interim

22   Order.  Debtors shall have no right to use the Pre-Petition Lender's Cash Collateral after the occurrence

23   and during the continuance of any Event of Default (as hereinafter defined), except as provided herein

24   with respect to the Carve-Out (as hereinafter defined).

25         2.     Under no circumstances shall any of the Pre-Petition Lender's Cash Collateral be used

26   to pursue any action or joinder in any action, counter-claim, proceeding, application, motion, objection,

27   defense or other contested matter, the purpose of which is to seek any order, determination or similar

28   relief (including conducting formal or informal discovery in connection therewith) (a) challenging the

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

1  legality, validity, amount, priority, perfection or enforceability (as the case may be) of any claim of the

2  Pre-Petition Lender against Debtors or any lien of the Pre-Petition Lender against Debtors' property

3  (collectively, the "Pre-Petition Lender's Claims"); (b) invalidating, setting aside, avoiding or

4  subordinating, in whole or in part, any of the Pre-Petition Lender's Claims; (c) seeking authority to use

5  any of the Pre-Petition Lender's Cash Collateral without the Pre-Petition Lender's consent, other than

6  as provided herein; or (d) challenging the legality, validity, amount, priority, perfection or

7  enforceability (as the case may be) of any claim of the Pre-Petition Lender against Debtors under the

8  Loan Documents; provided, however, that should a statutory committee be appointed under Bankruptcy

9  Code section 1102, such committee may use, subject to the Cash Budget, up to $25,000 of Pre-Petition

10 Lender's Cash Collateral, solely to investigate the Pre-Petition Lender's Claims; and provided further,

11 however, that any challenge regarding the Pre-Petition Lender's Claims asserted by such committee(s)

12 must be commenced on or before the earlier to occur of (x) twenty (20) days after the appointment of

13 such committee; or (y) sixty (60) days after the Petition Date.

14      4.      All use of the Pre-Petition Lender's Cash Collateral shall be subject to compliance with,

15 in addition to this Interim Order, the Initial Cash Budget; provided, however, that compliance with the

16 Initial Cash Budget shall be deemed satisfied if the actual aggregate expenditures for every four-week

17 period (i.e. post-petition weeks one through four, weeks five through eight, etc.) do not exceed by more

18 than twenty percent (20%) the aggregate budgeted amount for such four-week period as set forth in the

19 Initial Cash Budget.  The Initial Cash Budget may be modified with the written consent of both Debtors

20 and the Pre-Petition Lender, respectively, without the need for Court approval.

21      5.      To the extent that the full amount of any of the expenses budgeted for a particular four-

22 week period under the Initial Cash Budget is not disbursed during such four-week period, the unused

23 balance shall be added to the amount of budgeted expenses for ensuing four-week periods and the Initial

24 Cash Budget shall be deemed to be amended (and approved) to reflect the same, such that Debtors may

25 use such unused budgeted amounts in subsequent four-week periods in addition to originally-budgeted

26 amounts for such four-week periods.

27      6.      As adequate protection under Bankruptcy Code sections 361, 362, 363 and 552 for any

28 diminution in the value (as it existed on the Petition Date) of Pre-Petition Lender's interest in the

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

Cathay Collateral (any such diminution to be determined by agreement or order of the Bankruptcy Court after notice and a hearing) caused by the imposition of the automatic stay and/or Debtors' use of the Pre-Petition Lender's Cash Collateral and other Cathay Collateral (a "Value Diminution"), the Pre-Petition Lender shall receive:

(a)    monthly, on or before the first day of each month and continuing during the pendency of the Chapter 11 Cases, adequate protection payments made by Debtors to the Pre-Petition Lender in an amount equal to the non-default contractual rate of interest applicable from time to time to amounts outstanding under the Cathay Loan (the "Adequate Protection Payments"), and the automatic stay hereby is vacated and modified to the extent necessary to permit Debtors to make such Adequate Protection Payments and the Pre-Petition Lender to apply them against the Pre-Petition Lender's Claims;

(b)    replacement liens to secure the amount of any Value Diminution (the "Replacement Liens"), which Replacement Liens shall: (i) be subject and junior only to the Carve-Out (defined below), and any Prior Liens,[1] (ii) attach to the Cathay Collateral as of the Petition Date and any other assets of Debtors that are subject to a valid and perfected lien as of the Petition Date, causes of action under chapter 5 of the Bankruptcy Code and the proceeds thereof ("Avoidance Actions"), any other previously unencumbered assets of Debtors, and any proceeds of the foregoing, and (iii) be in addition to the Pre-Petition Lender's Claims and liens; and

(c)    to the extent permitted by Bankruptcy Code section 507(b), a superpriority claim (the "Pre-Petition Lender's Superpriority Claim") against Debtors' estates, subject and junior only to the Carve-Out.

7.    All claims and liens of the Pre-Petition Lender, including, without limitation, the Replacement Liens and the Pre-Petition Lender's Superpriority Claims, shall be subject to carve-out (the "Carve-Out") from its liens and claims, including, without limitation, the Replacement Liens, the

---

[1] "Prior Liens" shall consist of any and all valid and duly perfected liens, mortgages or other security interests in the any assets of Debtors in existence and senior to the interests of Pre-Petition Lender as of the Petition Date.

Pre-Petition Lender's Claims, and the Pre-Petition Lender's Superpriority Claim, for (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 § U.S.C. 1930, and (ii) only to the extent the amounts are not available under the Cash Budget, an amount not exceeding two million dollars ($2,000,000) in the aggregate, which amount may be used after the occurrence and during the continuation of an Event of Default (defined below), to pay the fees and expenses of professionals retained by Debtors and any statutory committee and allowed (or allowable) by the Bankruptcy Court (as to which allowed or allowable fees and expenses the Pre-Petition Lender waives any right to seek disgorgement); provided, however, that (x) Debtors shall be permitted to pay compensation and reimbursement of expenses allowed, allowable or otherwise authorized by the Bankruptcy Court and payable under Bankruptcy Code sections 330 and 331 in accordance with the Cash Budget; (y) the Carve-Out shall not be reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to the extent ultimately allowed or allowable by the Bankruptcy Court) prior to the occurrence of an Event of Default in respect of which the Carve-Out is invoked; and (z) the Pre-Petition Lender waive any right to seek disgorgement thereof; and provided, further, that nothing herein shall be construed to impair the ability of the Pre-Petition Lender to object to the reasonableness of any of the fees, expenses, reimbursement or compensation sought by the professionals retained by Debtors or any statutory committee.

8.     The Debtors shall be authorized to use the Pre-Petition Lender's Cash Collateral through the earliest of (a) twelve (12) months from the Petition Date, unless (x) the confirmation hearing for Debtors' chapter 11 plan has commenced on or before such date, in which case the foregoing twelve (12) month period shall be extended automatically to fifteen (15) months from the Petition Date without action or approval by Debtors, the Pre-Petition Lender or the Bankruptcy Court, or (y) a date as otherwise agreed to in writing by Debtors and the Pre-Petition Lender (for which no Bankruptcy Court approval will be required), (b) the date any chapter 11 plan confirmed in the Chapter 11 Cases becomes effective, or (c) the occurrence of an Event of Default (as hereinafter defined) that is no longer subject to cure (each, a "Termination Date").  Notwithstanding the occurrence of a Termination Date, upon Debtors' receipt of sufficient funds, Debtors shall be entitled to continue to use the Pre-Petition Lender's Cash Collateral to pay (i) amounts that fall within the scope of the Carve-Out, and (ii) all

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

expenses set forth in and in accordance with the Cash Budget for the period through the Termination Date.

9.      Upon written notice from the Pre-Petition Lender, any of the following shall be an event of default (each an "Event of Default") (for purpose of items (i) through (vii) by way of a final order, the effectiveness of which has not been stayed): (i) appointment of a chapter 11 trustee with respect to either of the Chapter 11 Cases; (ii) appointment of an examiner with expanded powers with respect to either of the Chapter 11 Cases; (iii) conversion of either of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (iv) dismissal of either of the Chapter 11 Case; (v) the Bankruptcy Court terminating either of the Debtors' authority to operate its business; (vi) reversal, vacatur or stay of the effectiveness of this Interim Order (which must be in a form reasonably acceptable to the Pre-Petition Lender); (vii) this Interim Order being amended, supplemented or otherwise modified without the prior written consent of the Pre-Petition Lender; (viii) any use of Cash Collateral to make a payment that is not in compliance with the Initial Cash Budget; (ix) breach by Debtors of any other provision of this Interim Order, and such breach remains uncured for a period of ten (10) days after written notice of such breach is actually received by Debtors; or (x) the filing of any action or joinder in any action, counter-claim, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, determination or similar relief (a) challenging the legality, validity, priority, perfection or enforceability (as the case may be) of the Pre-Petition Lender's Claims; or (b) invalidating, setting aside, avoiding or subordinating, in whole or in part, any of the Pre-Petition Lender's Claims.

10.     The Pre-Petition Lender shall not be required to file or serve financing statements, notices of lien or similar instruments that otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect the Replacement Liens; and the failure by Debtors to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement Liens.

11.     Notwithstanding an Event of Default, any amounts that have been disbursed in accordance with the Cash Budget and/or the Carve-Out shall not be subject to disgorgement in favor of the Pre-Petition Lender absent a finding of mistaken payment, bad faith or fraud.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

12.     To the extent applicable, this Interim Order is not subject to the 14-day stay provision of Bankruptcy Rules 4001(a)(3) or 6003.

13.     Debtors shall cause a copy of this Interim Order to be served within three (3) business days of its entry, by electronic mail, U.S. Mail or the Court's ECF noticing of the Interim Hearing to: (a) Pre-Petition Lender: _____, (b) the Office of the United States Trustee for the District of Nevada, Attn: ___; (c) counsel for any statutory committee appointed in this case, and if no such committee was appointed, then to the parties listed on the List of Creditors Holding the 20 Largest Unsecured Claims; and (d) all other secured creditors, and all other parties requesting notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").

14.     Final Hearing.  A hearing to consider entry of an order granting the relief set forth in this Interim Order on a final basis (the "Final Order") shall be held on _____, at _____ _.m. (the "Final Hearing") in _____; with any objections (the "Objections") to entry of a Final Order due to be timely filed electronically with the Court and served on the Notice Parties and Debtors' counsel:  Fox Rothschild, LLP, 3800 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169, Attn: Brett A. Axelrod, Esq. (collectively, the "Objection Notice Parties") (with a courtesy copy delivered directly to the Chambers of the Honorable August B. Landis) no later than _____, 2014.  Replies to timely-filed Objections, if any, shall be filed with the Bankruptcy Court electronically and served no later than _____, 2014 (with a courtesy copy delivered directly to the Chambers of the Honorable August B. Landis) by the Objection Notice Parties and the objecting party.

DATED:        January ___, 2014.

Prepared and respectfully submitted by:

**FOX ROTHSCHILD LLP**

By_____/s/_____
        BRETT A. AXELROD, ESQ.
        Nevada Bar No. 5859
        MICAELA RUSTIA MOORE, ESQ.
        Nevada Bar No. 9676
        3800 Howard Hughes Parkway, Suite 500
        Las Vegas, Nevada 89169
    *[Proposed] Counsel for Martifer Solar USA, Inc.
    and Martifer Aurora Solar, LLC*

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

APPROVED/DISAPPROVED:

**OFFICE OF THE UNITED STATES TRUSTEE**

BY_____

     J. Michal Bloom
     Trial Attorney for Acting U.S. Trustee,
     Tracy Hope Davis

## <u>CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021</u>

In accordance with Local Rule 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

☐    The Court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☐    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion, pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899

ACTIVE 24564346v1 01/23/2014

# EXHIBIT 2

Unaudited

Draft- Subject to Modification

**Martifer Solar USA, Inc.**
**13 Week Cash Flow Projections**

| Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Totals | [1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Beginning Date | 1/21/14 | 1/27/14 | 2/3/14 | 2/10/14 | 2/17/14 | 2/24/14 | 3/3/14 | 3/10/14 | 3/17/14 | 3/24/14 | 3/31/14 | 4/7/14 | 4/14/14 | | |
| Cash Receipts (Legacy) | $ - | $ 8,721 | $ - | $ 47,547 | $ 283,151 | $ 910,741 | $ - | $ - | $ - | $ - | $ 1,647,404 | $ - | $ - | $ 2,897,564 | [2] |
| Cash Receipts (New Busi.) | - | - | - | - | - | - | - | - | - | - | 615,000 | - | 60,000 | 675,000 | [3] |
| *Total Cash Receipts* | - | 8,721 | - | 47,547 | 283,151 | 910,741 | - | - | - | - | 2,262,404 | - | 60,000 | 3,572,564 | |
| Direct Materials + Subs (Legacy) | - | 55,000 | 38,038 | 133,151 | - | 1,009,886 | - | - | - | - | 741,669 | - | - | 1,977,743 | [2] |
| Direct Materials + Subs (New Busi.) | - | 350,000 | - | - | - | 114,350 | - | 10,000 | 5,000 | 25,000 | 630,000 | 15,000 | 5,000 | 1,154,350 | [3] |
| *Total Dir. Mat. Disbursements* | - | 405,000 | 38,038 | 133,151 | - | 1,124,236 | - | 10,000 | 5,000 | 25,000 | 1,371,669 | 15,000 | 5,000 | 3,132,093 | |
| Payroll | 161,176 | - | 161,176 | - | 161,176 | - | 161,176 | - | 161,176 | - | 161,176 | - | 161,176 | 1,128,234 | [4] |
| Commissions | - | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Insurance | - | 43,500 | - | - | - | 43,500 | - | - | - | 43,500 | - | - | - | 130,500 | |
| Expense Reimbursements | - | 36,000 | - | - | - | 36,000 | - | - | - | 36,000 | - | - | - | 108,000 | |
| Fuel | - | - | 3,700 | - | - | - | 3,700 | - | - | - | 3,700 | - | - | 11,100 | |
| Rent | - | 22,050 | - | - | - | 22,050 | - | - | - | 22,050 | - | - | - | 66,150 | |
| Utilities | - | 12,000 | - | - | - | 12,000 | - | - | - | 12,000 | - | - | - | 36,000 | |
| Other Expenses | - | - | 12,000 | - | - | - | 12,000 | - | - | - | 12,000 | - | - | 36,000 | |
| IT Services | - | 10,300 | - | - | - | 10,300 | - | - | - | 10,300 | - | - | - | 30,900 | |
| Outside Services | - | - | 38,000 | - | - | - | 38,000 | - | - | - | 38,000 | - | - | 114,000 | |
| Vehicle Leases | - | - | 8,250 | - | - | - | 8,250 | - | - | - | 8,250 | - | - | 24,750 | |
| Contingency | - | 7,500 | 7,500 | 132,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 215,000 | [5] |
| *Total Operating Disbursements* | 161,176 | 131,350 | 230,626 | 132,500 | 168,676 | 131,350 | 230,626 | 7,500 | 168,676 | 131,350 | 230,626 | 7,500 | 168,676 | 1,900,634 | |
| **Net Operating Cash Flows** | (161,176) | (527,629) | (268,664) | (218,104) | 114,475 | (344,845) | (230,626) | (17,500) | (173,676) | (156,350) | 660,109 | (22,500) | (113,676) | (1,460,164) | |
| Debtor's Legal Fees (Ch.11) | - | - | - | - | - | - | - | - | - | - | - | - | 370,000 | 370,000 | |
| Debtor's FA Fees (Ch. 11) | - | - | - | - | - | - | - | - | - | - | - | - | 75,000 | 75,000 | |
| Debtor's IB Fees (Ch. 11) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | [6] |
| Debtor's Legal Fees (Other) | - | - | - | - | - | - | - | - | - | - | - | - | 245,000 | 245,000 | |
| Committee's Fees | - | - | - | - | - | - | - | - | - | - | - | - | 50,000 | 50,000 | |
| Chapter 11 UST Fees | - | - | - | - | - | - | - | - | - | - | - | - | 6,500 | 6,500 | |
| *Total Professional Fees* | - | - | - | - | - | - | - | - | - | - | - | - | 746,500 | 746,500 | [7] |
| Interest Expense- Secured Debt | - | 57,768 | - | - | - | 57,768 | - | - | - | 57,768 | - | - | - | 173,305 | [8] |
| Net Cash Flow Before DIP Draws | (161,176) | (585,398) | (268,664) | (218,104) | 114,475 | (402,613) | (230,626) | (17,500) | (173,676) | (214,118) | 660,109 | (22,500) | (860,176) | (2,379,969) | |
| Beginning Cash | 505,700 | 505,700 | 220,302 | 211,638 | 268,534 | 383,009 | 264,746 | 264,119 | 256,619 | 262,943 | 263,825 | 923,934 | 901,434 | 505,700 | [9] |
| DIP Facility Draws | 161,176 | 300,000 | 260,000 | 275,000 | - | 284,350 | 230,000 | 10,000 | 180,000 | 215,000 | - | - | 160,000 | 2,075,526 | [10] |
| **Net Ending Cash** | $ 505,700 | $ 220,302 | $ 211,638 | $ 268,534 | $ 383,009 | $ 264,746 | $ 264,119 | $ 256,619 | $ 262,943 | $ 263,825 | $ 923,934 | $ 901,434 | $ 201,257 | $ 201,257 | |

**Notes:**

[1] All dates represent the beginning Monday, except for Week 1, the beginning of which is the Petition Date

[2] Martifer restructured its sales team in December 2013 with a mandate that all new contracts generate positive cash flows.  "Legacy" business represents those contracts in place prior to this restructuring

[3] While all new business has been calculated as cash flow positive, contracts typically require initial cash outlays up to several months prior to recognition of cash receipts, as is common industry practice

[4] Week 1 payroll is assumed to be paid through the DIP Facility (i.e. Martifer Solar, Inc. as DIP Lender) in advance of finalization of the DIP Facility loan agreement

[5] Assumes amounts due to critical vendors of approximately $125,000 are paid by Week 4 pursuant to Section 105 or other provisions of the Bankruptcy Code

[6] Investment Banking fees of $300,000 contemplates a potential exit financing transaction.  Should this transaction not materialize within this budget period, such corresponding fees will not be paic

[7] Professionals' monthly invoices are assumed to be paid at 80% of fees and 100% of expenses (for January 2014 through March 2014 invoices).  The 20% holdbacks are assumed to be paid upon Plan Confirmation.

[8] Assumes default interest rate at 11% per annum based on a principal balance of $6.3 million

[9] Beginning cash balance per the Debtor cash balance as of 1/21/14.

[10] DIP Facility draws relate to a pending Debtor in Position facility.  All related interest is accrued.  Draws on the DIP Facility are projected for any week in which the cash balance is projected to drop below $200,000