BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
mmoore@foxrothschild.com
*[Proposed] Counsel for Martifer Solar USA, Inc. and Martifer Aurora Solar, LLC*

Electronically filed January 24, 2014

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

MARTIFER SOLAR USA, INC., a California corporation,

Debtor.

Case No. 14-10357-abl

Chapter 11

**MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 364 AND FED. R. BANKR. P. 4001(c): (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) GRANTING RELATED RELIEF; AND (III) SCHEDULING FINAL HEARING**

Hearing Date: OST PENDING
Hearing Time: OST PENDING

Martifer Solar USA, Inc. ("Martifer Solar USA") and Martifer Aurora Solar, LLC ("Aurora", and collectively with Martifer Solar USA, the "Debtors"), debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), respectfully submit this motion (the "Motion") for entry of a an interim order (the "Interim Order") and final order (the "Final Order") pursuant to section 364 of title 11 of the United States Code, §§ 101 *et. seq.* (the "Bankruptcy Code"), Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001(b) and (c) of the Local Rules of Bankruptcy Practice for the United States Bankruptcy Court, District of Nevada ("Local Rules") authorizing and approving, among other things, (a) Debtors to

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

obtain postpetition financing (the "Postpetition Financing") from Martifer Solar, Inc. (the "Lender") on a non-priming secured and superpriority basis pursuant to a Debtor-In-Possession Credit Agreement (the "DIP Agreement"), and (b) scheduling a final hearing with respect to the relief requested herein.

Debtors seek authorization for the Postpetition Financing in order to provide funding and liquidity for the ongoing operation of Debtors' businesses and to fund the expenses of the Chapter 11 Cases. A copy of the DIP Agreement[1] is attached as **Exhibit "1"** to the Supplemental Omnibus Declaration of Klaus Berhhart (the "Supplemental Omnibus Declaration"), filed in support hereof. Debtors are seeking to use the Postpetition Financing pursuant to a Cash Budget, a copy of which (pertaining to the first 13-week period following the Petition Date) is attached to the DIP Agreement as **Exhibit "A"** thereto (the "Initial Cash Budget").

In compliance with Bankruptcy Rule 4001(c)(1)(B), Debtors provide the following additional information regarding the proposed Postpetition Financing. Nothing in the following summary alters or amends the terms of the DIP Agreement or the proposed Final Order, and to the extent of any conflict between the following summary and the DIP Agreement or the proposed Final Order, the DIP Agreement or the Final Order, as applicable, shall control:

| **CITATION TO DIP AGREEMENT/ INTERIM ORDER[2]** | **MATERIAL PROVISIONS OF POSTPETITION FINANCING** |
|---|---|
| | |
| DIP Agreement, § 2.5<br>Interim Order, ¶5 | **Interest Rate**: Each Loan shall bear interest at a rate per annum of nine percent (9.0%).Notwithstanding the foregoing, in the event an Event of Default has occurred and is continuing, the Loans shall bear interest at a rate per annum equal to the rate set forth above plus three percent (3.0%) from the date of occurrence of such Event of Default until the date such Event of Default is cured or waived. |
| | |
| DIP Agreement, § 1.1 | **Maturity**: Absent an uncured Event of Default, fifteen (15) months from the Petition Date, unless otherwise agreed in writing by Debtors and Lender (for which no Court approval, other than approval of the DIP |

[1] Capitalized terms used, but not defined, herein shall have the meaning ascribed to such terms in the DIP Agreement.

[2] The proposed Interim Order is attached hereto as **Exhibit "1."**

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

| CITATION TO DIP AGREEMENT/ INTERIM ORDER[2] | MATERIAL PROVISIONS OF POSTPETITION FINANCING |
|---|---|
| | Agreement, will be required). |
| | |
| DIP Agreement, § 7.1 | **Events of Default**: consist of the following (for purpose of items (i) through (vi) by way of a final order, the effectiveness of which has not been stayed): (i) appointment of a chapter 11 trustee with respect to either of the Chapter 11 Cases; (ii) appointment of an examiner with expanded powers with respect to either of the Chapter 11 Cases; (iii) conversion of either of the Chapter 11 Cases to one under chapter 7 of the Bankruptcy Code; (iv) dismissal of either of the Chapter 11 Cases; (v) approval of a motion granting a party a superpriority claim which is senior or pari passu with the DIP Superpriority Claim (other than the Carve-Out and the Pre-Petition Lender's Superpriority Claim); (vi) granting of relief from the automatic stay to permit the Pre-Petition Lender to exercise rights or remedies regarding the Pre-Petition Lender's Collateral; (vii) use of Loan advances to make a payment that is not in compliance with the Cash Budget or this Agreement; (viii) failure of the Final Order to have been entered by the Court by the date that is forty-five (45) days (or such longer period as Lender and Debtors agree) after the date on which the motion for entry of the Final Order is filed; (ix) Debtor' breach of any other provision of the Final Order and such breach remains uncured for a period of ten (10) days after notice is provided to Debtors of such breach; (x) Debtors' failure to comply with either section 4.1(b) or 4.2(d) of the DIP Agreement; and (xi) the commencement of any lawsuit seeking monetary relief against Lender on behalf of Debtors' or the estates, other than for a breach of the DIP Agreement. |
| | |
| DIP Agreement, § 2.11<br><br>Interim Order, ¶ 7(b) | **DIP Financing Liens**: Pursuant to Bankruptcy Code sections 364(c)(2) and (c)(3), the Obligations of Debtors under the DIP Agreement shall be secured by a valid and duly perfected junior Lien on the Pre-Petition Lender's Collateral, any other assets of Debtors that are subject to a valid and perfected lien as of the Petition Date, Avoidance Actions and any other previously unencumbered assets of Debtors (collectively, the liens to be granted to Lender are referred to herein as the "DIP Lien" and the collateral subject to such DIP Lien is referred to herein as the "DIP Collateral"); provided that the DIP Lien shall in all instances and respects be subject and subordinate to (a) the lien and security interest of the Pre-Petition Lender in and to the Pre-Petition Lender's Collateral under the Pre-Petition Credit Agreement, (b) the Replacement Liens, and (c) the Carve-Out. The Interim Order shall provide that the DIP Lien shall attach to the DIP Collateral and be binding and enforceable with respect thereto upon entry of such order(s) without further action on the part of Debtors or Lender with respect to the Interim Advance Amount. The Final Order shall provide that the DIP Lien shall attach to the DIP Collateral and be binding and enforceable with respect thereto upon entry |

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

| CITATION TO DIP AGREEMENT/ INTERIM ORDER[2] | MATERIAL PROVISIONS OF POSTPETITION FINANCING |
|---|---|
| | of such order(s) without further action on the part of Debtors or Lender with respect to the full amount of the Loans. |
| | |
| DIP Agreement, §2.10<br><br>Interim Order, ¶ 7(a) | **DIP Superpriority Claim**: Pursuant to Bankruptcy Code section 364(c)(1), the Obligations of Debtors under the DIP Agreement shall at all times constitute allowed administrative expense claims (the "DIP Superpriority Claim") in the Chapter 11 Cases having priority over all claims against Borrower now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kinds and over any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114, subject and junior in all instances and respects in all instances and respects only to (a) the Pre-Petition Lender's Superpriority Claims, and (b) the Carve-Out. |
| | |
| DIP Agreement, §§ 1.1, 2. 3 | **Maximum Commitment Amount**: Five million dollars ($10,000,000). The Initial Advance Amount is (x) $2,160,000.00, less (y) any Emergency Advances previously made. Emergency Advances are set forth on Schedule 1 to the DIP Agreement and shall be funded by Lender without any condition precedent. |
| | |
| DIP Agreement, §§ 4.1-4.2 | **Borrowing Conditions**: All Loans borrowings (other than Emergency Advances) are subject to the following conditions: (a) the Interim Order shall have been entered with respect to the Initial Advance Amount, and the Final Order shall be in full force and effect and shall not have been reversed, modified, amended or stayed (or application therefor made) with respect to any Loans in addition to the Initial Advance Amount, except for modifications and amendments that are reasonably acceptable to Lender; (b) the Pre-Petition Lender shall be stayed or enjoined, or shall have refrained, from the prosecution of claims against the Lender, Martifer Solar, S.A. and their affiliates.<br><br>All Loan borrowings (other than Emergency Advances) in excess of the Initial Advance Amount are subject to the following additional conditions: (a) representations and warranties in the DIP Agreement shall be true and correct in all material respects as of the date each Loan is made as if made on such date (except if such representation or warranty specifically relates only to a prior date, in which case it shall be true and correct in all material respects as of such earlier date); (b) no administrative claim that is senior to or pari passu with the DIP Superpriority Claim shall exist, except the Carve-Out and the Pre-Petition Lender's Superpriority Claim; (c) Lender shall have received the DIP Agreement, the Notes and all other Loan Documents, and each other agreement, document and instrument relating to the loan and other credit |

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

| CITATION TO DIP AGREEMENT/ INTERIM ORDER[2] | MATERIAL PROVISIONS OF POSTPETITION FINANCING |
|---|---|
| | transactions contemplated by the DIP Agreement, each duly executed where appropriate and in form and substance reasonably satisfactory to Lender; (d) except to the extent the parties may agree to later dates, Debtors shall: (i)on or before the 120 days after the Petition Date, file a Reorganization Plan and Disclosure Statement, reasonably acceptable to the Lender; (ii) on or before 160 days after the Petition Date, obtain an order approving the Disclosure Statement; and (iii) on or before 200 days after the Petition Date, obtain an order approving the Reorganization Plan. |
| | |
| DIP Agreement, § 1.1<br><br>Interim Order, ¶ 9 | **<u>Carve-Out</u>**: DIP Lien and DIP Superpriority Claim are subject to a carve-out for (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930, and (ii) an amount not exceeding two million dollars ($2,000,000) in the aggregate, which amount may be used after the occurrence and during the continuation of an Event of Default, to pay the fees and expenses of professionals retained by Debtors and any Committee and allowed (or allowable) by the Bankruptcy Court (as to which allowed or allowable fees and expenses Lender waives any right to seek disgorgement); provided, however, that Debtors shall be permitted to pay compensation and reimbursement of expenses allowed, allowable or otherwise authorized by the Bankruptcy Court and payable under Bankruptcy Code sections 330 and 331 in accordance with the Cash Budget, the Carve-Out shall not be reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to the extent ultimately allowed or allowable by the Bankruptcy Court) prior to the occurrence of an Event of Default in respect of which the Carve-Out is invoked, and Lender waives any right to seek disgorgement thereof; and provided, further, that nothing herein shall be construed to impair the ability of Lender to object to the reasonableness of any of the fees, expenses, reimbursement or compensation sought by the professionals retained by Debtors or any Committee. |
| | |
| *Types of Provisions Identified in Bankruptcy Rules 4001(c)(1)(B)(i) through (xi)* | |
| | |
| DIP Agreement, §2.11<br><br>Interim Order, ¶ 7(b) | **<u>(i) Grant of priority/lien under 11 U.S.C. § 364(c) or (d)</u>**: Yes-- <u>see</u> above (no priming liens). |
| | |
| N/A | **<u>(ii) Adequate protection for pre-petition claims</u>**: None. |
| | |
| N/A | **<u>(iii) Determination re: pre-petition lien/claim</u>**: None. |
| | |

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

| CITATION TO DIP AGREEMENT/ INTERIM ORDER[2] | MATERIAL PROVISIONS OF POSTPETITION FINANCING |
|---|---|
| DIP Agreement, § 7.2<br><br>Interim Order, ¶ 11 | **(iv) Waiver/modification of the automatic stay**: requires three (3) business days notice upon uncured Event of Default and is subject to the opportunity for Debtor/Committee to seek hearing before the Court (stay continues pending such hearing). |
| | |
| DIP Agreement, Art. V | **(v) Waiver/modification of rights re: chapter 11 plan, cash collateral or post-petition financing**: covenant not to propose, file, solicit votes for, support, or prosecute, a Reorganization Plan or disclosure statement other than Debtors' Reorganization Plan, unless such Reorganization Plan provides for payment in full of the Obligations on the effective date thereof. |
| | |
| N/A | **(vi) Confirmation/disclosure statement deadlines**: 120 days to file Reorganization Plan and Disclosure Statement reasonably acceptable to Lender. 160 days to obtain order approving the Disclosure Statement. 200 days to obtain order approving the Reorganization Plan. |
| | |
| | **(vii) Wavier/modification of lien rights under non-bankruptcy law**: None. |
| | |
| N/A | **(viii) Release of estate cause of action**: None. |
| | |
| N/A | **(ix) Indemnification**: None. |
| | |
| | **(x) 506(c) waiver**: None. |
| | |
| DIP Agreement, § 2.11<br><br>Interim Order, ¶ 7(b) | **(xi) Lien/claim on avoidance actions**: Yes—see above. |

This Motion is made and based upon the following memorandum of points and authorities, Supplemental Omnibus Declaration of Klaus Berhhart (the "Omnibus Declaration"), the Supplemental Omnibus Declaration, the Declaration of James Wong (the "Wong Declaration"), the papers and pleadings on file with the Court in the Chapter 11 Cases, and any oral arguments the Court may entertain at the hearing on the Motion.

DATED this 23rd day of January, 2014.

**FOX ROTHSCHILD LLP**

By *   /s/Brett A. Axelrod*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
*[Proposed] Counsel for Martifer Solar USA, Inc. and Martifer Aurora Solar, LLC*

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

**MEMORANDUM OF LAW**

**POINTS AND AUTHORITIES**

**I.**

**JURISDICTION**

1. This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Bankruptcy Code section 364, Bankruptcy Rule 4001(c) and Local Rules 4001(b) and (c).

**II.**

**FACTUAL BACKGROUND**

**A. General Background.**

4. On January 21, 2014 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5. Each of the Debtors is continuing in possession of its property and is operating and managing its business, as a debtor in possession, pursuant to Bankruptcy Code sections 1107 and 1108. See generally Chapter 11 Case Docket.

6. No request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed. See id.

7. The factual background relating to Debtors' commencement of this Chapter 11 Case is set forth in detail in the Omnibus Declaration and is incorporated for all purposes herein by this reference.

**B. Debtors' Need for the Postpetition Financing.**

8. As described in greater detail in the Supplemental Omnibus Declaration, with the added expenses associated with the Chapter 11 Cases, Debtors require additional financing in order maintain operations and remain current on expenses. Operationally, Debtors require financing to ensure uninterrupted payment of expenses for the operation of their businesses, including payroll and other general and administrative expenses, paying subcontractors and all other operational needs. Debtors

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

also need to pay expenses associated with the Chapter 11 Cases, including professional fees and expenses and United States Trustee fees.

9. As set forth in the Initial Cash Budget, Debtors will need to borrow approximately two million dollars ($2,000,00) through the week ending April 14, 2014 in order to meet their operating expenses, make interest-only adequate protection payments to the Pre-Petition Lender and fund expenses for the administration of the Chapter 11 Cases. The Initial Cash Budget revenues are based on Debtor's internally-prepared projections—if actual revenues do not meet projections, then Debtors will need to increase borrowings under the Postpetition Financing above the amounts set forth in the Initial Cash Budget. Therefore, in order to ensure that Debtors will have sufficient liquidity to withstand fluctuations in the collection of receivables, and to fund the costs of administering the Chapter 11 Cases, Debtors believe that they may require up to five million dollars ($5,000,000) in postpetition financing. With these funding requirements in mind, Debtors negotiated the DIP Agreement with Lender, which provides for up to five million dollars ($5,000,000) in Postpetition Financing borrowings.

**III.**

**RELIEF REQUESTED**

10. By this Motion, Debtors seek authorization to obtain the Postpetition Financing from Lender pursuant to the DIP Agreement. Debtors are seeking to use Postpetition Financing pursuant to a Cash Budget, a copy of which (pertaining to the first 13-week period) is attached to the DIP Agreement as **Exhibit "1"** thereto (the "Initial Cash Budget").

11. Pursuant to Federal Rule of Bankruptcy Procedure 4001(c)(2), Debtors are seeking authorization to use Postpetition Financing pending a final hearing on the Motion in order to avoid immediate and irreparable harm to the estates. In order to keep Debtors' business operational, Debtors must be able to pay their subcontractors for work performed, satisfy other ongoing working capital needs and expenses of operation, including, without limitation, employee payroll expenses, and fund the costs of administering Debtors' estates, including without limitation, fees assessed by the Office of the United States Trustee and the Clerk of Court and fees and expenses of estate professionals. As indicated by the Initial Cash Budget, Debtors project that they will need to incur over $1,000,000 in

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Postpetition Financing borrowings through the first four full weeks after the Petition Date (ending on February 10, 2014). Accordingly, timely approval of the proposed DIP Financing is critical to preserving the going concern vale of Debtors' estates from the outset of the Chapter 11 Cases.

12. In addition, Debtors are requesting that the Court set a final hearing on the proposed Postpetition Financing. Debtors request that the Court set the final hearing within thirty (30) days of the Petition Date, subject to availability on the Court's calendar. Obtaining certainty regarding Debtors' ability to use Postpetition Financing will enable Debtors and their professionals to focus complete attention on the development and implementation of Debtors' plan of reorganization. In addition, the DIP Agreement provides that an Event of Default will occur if the Final Order is not entered within forty-five (45) days of the date that the Motion to approve the DIP Agreement is filed (unless otherwise agreed by Debtors and Lender).

## IV.

## LEGAL ARGUMENT

**Debtors Have Satisfied the Legal Requirements for Approval of the Postpetition Financing.**

### A. Debtors Cannot Obtain Financing on Terms More Favorable than Those of the DIP Agreement.

13. As a debtor in possession, each of the Debtors is authorized to operate its business under the Bankruptcy Code. See 11 U.S.C. § 1108. Bankruptcy Code section 364(a) provides that a debtor in possession may obtain unsecured credit as an administrative expense in the ordinary course of business without court approval. 11 U.S.C. § 364(a). Bankruptcy Code section 364(b) provides that a debtor in possession may obtain unsecured credit as an administrative expense outside of the ordinary course of business with Court authorization after notice and a hearing. 11 U.S.C. § 364(b).

14. If credit on an administrative expense basis is not available, then pursuant to section 364(c) of the Bankruptcy, upon court approval after notice and a hearing, a debtor in possession may obtain credit:

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(a) of [the Bankruptcy Code];
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c). Parties who extend credit are protected under section 364(e) from the effects of a reversal on appeal of the authorization to incur debt as long as they have acted in good faith. 11 U.S.C. § 364(e).

15. Other than the requirement of notice and a hearing, the only statutory prerequisite under Bankruptcy Code section 364(c) for obtaining credit on a secured basis and superpriority basis is that the debtor in possession must be unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1). 11 U.S.C. § 364(c); see also, In re Garland Corp., 6 B.R. 456, 461 n. 11 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) is authorized, after notice and a hearing, upon showing that unsecured credit cannot be obtained); In re Ames Dept. Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to seek other sources of financing under Bankruptcy Code sections 364(a) and (b).

16. To demonstrate that the requisite credit is not obtainable on an unsecured basis, the debtor need only demonstrate "by good faith effort that credit was not available" without the protections afforded to potential lenders by Bankruptcy Code section 364(c). Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Id. at 1088; see also In re Ames, 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing when it selected the least onerous financing option from the two remaining lenders); In re Reading Tube Indus., 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) ("Given the 'time is of the essence' nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders."). Where few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom., Anchor Savings Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n. 4 (N.D. Ga. 1989).

17. Debtors' particular financial circumstances make it exceedingly unlikely that it could obtain credit without offering the protections of a superpriority claim and a lien on available collateral.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

As of the Petition Date, all of Debtors' personal property (other than Avoidance Actions) was encumbered by liens in favor of the Pre-Petition Lender. Accordingly, there are no unencumbered assets (other than Avoidance Actions) nor any readily available funds that could be used to secure or repay post-petition financing on an unsecured administrative expense claim basis. In addition, Debtors' chief source of revenue to service or repay postpetition financing is the proceeds of accounts receivable, which proceeds (in addition to being part of the Cathay Collateral) are subject to fluctuations in terms of timing and collectability.

18. Under these circumstances, the price of "new money" postpetition financing would have been prohibitive for Debtors. Even if a previously uninvolved party could get comfortable with the level of risk attendant to financing the Chapter 11 Cases, it undoubtedly would demand a hefty cost premium as part of any financing proposal in order to compensate for such risk. While an existing lender often will be a viable option for postpetition financing, the Pre-Petition Lender was not interested in increasing its credit exposure beyond the current scope of borrowings (and certainly not on an unsecured administrative claim basis). Therefore, Debtors had few options when it came to locating a cost-effective source of funding for the Chapter 11 Cases. See Wong Declaration.

19. Fortunately, Lender is willing to provide the Postpetition Financing on eminently reasonable terms under the circumstances. Although Lender was not willing to provide the Postpetition Financing on an unsecured administrative claim basis, Lender did not demand a priming lien and instead is willing to accept a junior lien on all assets. The interest rate and other terms of the Postpetition Financing are favorable in today's market. See § C, infra. And Lender has agreed negotiate in good faith with Debtors to reach agreement on the terms of Debtors' Reorganization Plan, which would provide, *inter alia,* for the full amount of Obligations outstanding on the effective date of Debtors' Reorganization Plan to be converted to equity in the reorganized Martifer Solar USA on terms acceptable to the Lender. Debtors canvassed the market and was not able to find any other readily available funding source willing to provide credit to Debtors on an unsecured administrative expense claim basis, much less on terms as favorable as the Postpetition Financing. See Wong Declaration and Supplemental Omnibus Declaration. Therefore, the Debtors determined in the exercise of their business judgment that the Postpetition Financing to be provided by the Lender is most favorable under the

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

current circumstances and addresses the Debtors' working capital needs. The Debtors do not believe that they could obtain proposals for postpetition financing on terms and conditions more favorable to the Debtors' estates than those proposed herein.

20. Therefore, the Postpetition Financing satisfies the requirements of Bankruptcy Code section 364(c) because Debtors could not obtain the necessary credit solely on the basis of an administrative expense claim under Bankruptcy Code section 503(b).

**B. Debtors' Decision to Enter into the DIP Agreement Is Supported by Sound Business Judgment.**

21. Courts generally give broad deference to the business decisions of a debtor. See, e.g., Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1987). In particular, a bankruptcy court should defer to a debtor's reasonable business judgment regarding the need for funds, so long as the proposed financing agreement does not contain terms that either leverage the bankruptcy process or that benefit a third party rather than the bankruptcy estate. See, e.g., In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment ..., [were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors"). This was explained by the bankruptcy court in In re Ames Department Stores, Inc., 115 B.R. 34 (Bankr. S.D.N.Y. 1990):

> [A] court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.

Id. at 40.

22. Here, Debtors' decision to enter into the Postpetition Financing represents a reasonable exercise of business judgment. As demonstrated by the Initial Cash Budget, Debtors have an immediate need for the Postpetition Financing in order to fund operations and the expenses of the Chapter 11 Cases. Debtors and Lender negotiated the terms of the proposed DIP Financing at arms' length in good

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

faith, and Lender was represented by independent counsel. Lender is willing to provide the Postpetition Financing on very favorable terms due to its existing affiliation with Debtors. See § C, infra. Lender also has agreed to convert the full balance of the Postpetition Financing into equity in reorganized Martifer Solar USA, subject to reaching agreement on the terms of a chapter 11 plan.

23. Without the Postpetition Financing, Debtors would not be able to fund operations and proceed with a chapter 11 plan. Instead, Debtors would be faced with the potential for administrative insolvency followed by a liquidation. Given the choice between these two alternatives, Debtors prudently negotiated the DIP Agreement with Lender to ensure that Debtors would have the necessary funding to bring the Chapter 11 Cases to a successful conclusion. Therefore, the Court should approve Debtors' decision to enter into the DIP Agreement as an exercise of sound business judgment.

**C. The Terms of the Postpetition Financing are Reasonable Under The Circumstances And Should Be Approved.**

24. The terms of the DIP Agreement are similar to those often included in complex financing arrangements. Indeed, the DIP Agreement and the proposed Final Order reflect the give and take that result from complex financing negotiations. See Wong Declaration. Courts have recognized that a debtor often must make significant concessions in exchange for financing. See, e.g., In re Ellingsen MacLean Oil Co., 65 B.R. 358, 365 (Bankr. W.D. Mich. 1986), aff'd, 834 F.2d 599 (6th Cir. 1987) (chapter 11 postpetition financing is "fraught with dangers for creditors . . ."). Accordingly, courts recognize that a debtor may need to "enter into a hard bargain with a creditor in order to acquire the needed funds to complete reorganization." Id. at 365.

25. Similarly, lenders often agree to subordinate or "carve-out" from their collateral funds to pay professionals. See Harvis Trien & Beck, P.C. v. Federal Home Mortgage Corp. (In re Blackwood Assocs., L.P.), 187 B.R. 856, 860 (Bankr. E.D.N.Y. 1995) (court advised that if professionals really want to be paid they had best insist upon a "real carve out"); In re Ames, 115 B.R. at 40 (noting practice of district to insist on carve-out for fees in order to preserve adversary system).

26. As noted above, the terms of the DIP Agreement are very favorable under the circumstances. Lender negotiated for a junior lien on all assets. Thus, this is not a case where an over-reaching (and/or oversecured) pre-petition lender seeks to enhance its collateral package at the expense

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

of unsecured creditors. Instead, Lender simply requested reasonable protections to secure repayment of the Postpetition Financing.

27. Similarly, the interest rate of nine percent (9.0%) is reflective of the competitive rates available in the market for financing secured by a junior lien on assets that may not be readily convertible to cash. See Wong Declaration.

28. Furthermore, the DIP Agreement provides for a reasonable Carve-Out, which covers fees and expenses of professionals employed by a statutory committee (if appointed) as well as professionals employed by Debtors. The Events of Default and conditions to borrowing are customary in postpetition financings, and Lender's ability to exercise remedies upon the occurrence of an Event of Default expressly allows for a hearing before the Bankruptcy Court on shortened notice to resolve any dispute. Lender does not unduly seek to control or restrict Debtors' ability to prosecute the Chapter 11 Cases with limitations or prohibitions on Debtors' ability to use cash collateral or propose a plan.

29. A key condition for borrowings (other than Emergency Advances) under the DIP Agreement is the Pre-Petition Lender shall be stayed or enjoined, or shall have refrained, from the prosecution of claims against the Lender, Martifer Solar, S.A. and their affiliates. Lender, along with its parent company, Martifer Solar, S.A., is a guarantor of the Debtors' obligations to the Pre-Petition Lender, and it is willing to make the substantial financial contribution to Debtors' reorganization in the form of the Postpetition Financing so long as it is not required to simultaneously defend itself from efforts by the Pre-Petition Lender to enforce the guaranty. Accordingly, Debtors are simultaneously filing a motion seeking injunctive relief to enjoin the Pre-Petition Lender from attempting to enforce the guaranty against the Lender, Martifer Solar, S.A. and their affiliates.

30. Therefore, the Court should approve the Postpetition Financing based on its fair and reasonable terms.

**D. The Court Should Schedule Interim and Final Hearings On This Motion Pursuant To Bankruptcy Rule 4001(c)(2).**

31. Bankruptcy Rule 4001(c)(2) provides that a final hearing on a motion to obtain credit pursuant to Bankruptcy Code Section 364 may be commenced not earlier than fourteen (14) days after service of the motion. Upon request, however, the Bankruptcy Court is empowered to conduct an

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

32. Pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 9006, Debtors requests the Court conduct an expedited interim hearing on the Motion (the "Interim Hearing") and, after the entry of the Interim Order, allow Debtors to enter the DIP Agreement, borrow funds in accordance therewith. Debtors have an urgent and immediate need for cash to fund chapter 11 administration expenses and operations, as set forth in the Initial Cash Budget. Debtors could not obtain financing on terms more favorable than presented herein, for the reasons set forth above. See §A, supra. Debtors submits that the terms of the proposed Postpetition Financing are fair, reasonable and in the best interests of the Debtors' estates. See §C, supra. Therefore, entry of the Interim Order is proper under Bankruptcy Rule 4001(c)(2).

33. Also pursuant to Bankruptcy Rule 4001(c)(2), Debtors request that the Court schedule the final hearing on the Motion within thirty (30) days of the Petition Date, subject to availability on the Court's calendar. Obtaining certainty regarding Debtors' ability to use Postpetition Financing is a key step for Debtors to stabilize operations as chapter 11 debtors in possession, which will then enable Debtors and their professionals to focus complete attention on the development and implementation of a plan of reorganization.

**V.**

**NOTICE**

34. Notice of this Motion is being given by electronic mail, U.S. Mail or the Court's ECF noticing to the following parties or their counsel: (a) the Office of the United States Trustee for the District of Nevada, Attn: J. Michal Bloom; (b) counsel to Debtor's secured lenders; (c) the federal and state governmental units required by Local Bankruptcy Rule 2002(a)(6); (d) Debtors' known twenty largest unsecured creditors; and (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, Debtors respectfully submit that no further notice is necessary.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

## VI.
## CONCLUSION

WHEREFORE, based upon all the foregoing, as set forth in this Memorandum, the Motion, the Omnibus Declaration, the Supplemental Omnibus Declaration, the Wong Declaration and all other papers, documents, or other evidence submitted in support of the Motion, Debtors respectfully request that the Court grant the Motion in its entirety and: (1) approve the Postpetition Financing on an interim basis; (2) enter the Interim Order, in substantially the form attached hereto as **Exhibit "1;"** (3) schedule a final hearing on this Motion within thirty (30) days of the Petition Date; (4) in conjunction with the final hearing, enter the Final Order authorizing Debtors to borrow on a final basis under the terms of the Loan Documents; and (5) grant to Debtors such other relief as the Court deems necessary and appropriate.

DATED this 24th day of January, 2014.

**FOX ROTHSCHILD LLP**

By *_/s/Brett A. Axelrod_*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
*[Proposed] Counsel for Martifer Solar USA, Inc. and Martifer Aurora Solar, LLC*

**EXHIBIT "1"**

**PROPOSED INTERIM ORDER**

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
mmoore@foxrothschild.com
*[Proposed] Counsel for Martifer Solar USA and Martifer Aurora Solar, LLC*

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>MARTIFER SOLAR USA, INC., a California corporation,<br><br>Debtor. | Case No. 14-10357-abl<br><br>Chapter 11<br><br>**INTERIM ORDER PURSUANT TO 11 U.S.C. § 364 AND FED. R. BANKR. P. RULE 4001(C): (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) GRANTING RELATED RELIEF; AND (III) SCHEDULING FINAL HEARING**<br><br>Hearing Date: OST PENDING<br>Hearing Time: OST PENDING |

The Court, having reviewed and considered the Motion (the "Motion") filed by Martifer Solar USA, Inc. ("Martifer USA") and Martifer Aurora Solar, LLC ("Aurora", and collectively with Martifer USA, "Debtors") for entry of an interim order (the "Interim Order") and final order (the "Final Order")

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

pursuant to section 364 of title 11 of the United States Code, §§ 101 *et. seq.* (the "Bankruptcy Code"), Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001(b) and (c) of the Local Rules of Bankruptcy Practice for the United States Bankruptcy Court, District of Nevada ("Local Rules") authorizing and approving, among other things, (a) Debtors to obtain postpetition financing (the "Postpetition Financing") from Martifer Solar, Inc. (the "Lender") on a non-priming secured and superpriority basis pursuant to a Debtor-In-Possession Credit Agreement (the "DIP Agreement"), and (b) scheduling a final hearing with respect to the relief requested herein; and it appearing that the relief requested is in the best interests of Debtors' estates, creditors and all other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed and considered all other pleadings and evidence submitted by the parties in connection with the Motion; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having considered the oral arguments of counsel at the hearings held on January 28, 2014 (the "Interim Hearing"); and the Court having made findings of fact and conclusions of law on the record, which (to the extent not expressly set forth below) are incorporated herein pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Bankruptcy Rule 7052; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

**I. Background, Jurisdiction and Notice.**

A. On January 21 2014 (the "Petition Date"), Debtors commenced the above-captioned bankruptcy cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Each of the Debtors is continuing to operate its business as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee, examiner, or statutory committee has been appointed.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. Debtors have complied with the requirements of Bankruptcy Rules 4001(c) and 4001(d), and Local Rules 4001(b), 4001(c) and 9006, requiring, among other things, that the Interim Hearing be held on less than twenty-one (21) days' notice by serving the Motion and providing notice of the Interim Hearing to: (i) the Office of the United States Trustee; (ii) Debtors' twenty (20) largest unsecured creditors; (iii) counsel to Lender; (iv) counsel to the Pre-Petition Lender; and (v) all other parties requesting notice pursuant to Bankruptcy Rule 2002. Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rule 4001 in all respects.

**II. Findings Regarding the Postpetition Financing Based on the Record at the Hearing.**

D. Debtors have an immediate and critical need to obtain the Postpetition Financing. Debtors' ability to obtain the Postpetition Financing is critical to their ability to continue as a going concern during the course of the Chapter 11 Cases. The proceeds of the Postpetition Financing will be used to fund the costs of administering Debtors' estates, including, without limitation, (i) funding the operations of Debtors' businesses, (ii) making adequate protection payments to the Pre-Petition Lender, (iii) paying expenses incurred for the administration of the Chapter 11 Cases, including paying reasonable compensation of professional fees and expenses, (iv) paying any contractual obligations, and (v) repaying Loans. Debtors' access to sufficient liquidity through the incurrence of the Postpetition Financing under the terms of this Interim Order is vital to the preservation and maintenance of the going concern value of Debtors' estates and to Debtors' successful reorganization. Consequently, without the ability to obtain Postpetition Financing to the extent authorized pursuant to this Interim Order, Debtors and their estates would suffer immediate and irreparable harm.

E. The use of cash collateral alone would be insufficient to meet Debtors' immediate postpetition liquidity needs. Debtors are unable to obtain adequate unsecured credit allowable under Bankruptcy Code sections 364(b) and 503(b)(1). The Postpetition Financing reflects the most favorable

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

terms available to Debtors. Debtors require the Postpetition Financing, in addition to the use of cash collateral, to satisfy their postpetition liquidity needs.

F. Lender has indicated a willingness to provide Debtors with the Postpetition Financing, but solely on the terms and conditions set forth in this Final Order and in the Loan Documents (as defined in the DIP Agreement). After considering all alternatives, Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by Lender pursuant to the terms of this Final Order and the Loan Documents represents the best financing presently available to Debtors.

G. The security interests and liens granted pursuant to this Final Order to Lender are appropriate under Bankruptcy Code sections 364(c)(2) and (c)(3) because, among other things, such security interests and liens do not impair the interests of any holder of a valid, binding, continuing, enforceable and fully-perfected prepetition security interest or lien in the property of Debtors' estates.

H. Entry of this Interim Order is in the best interest of Debtors, the estates and creditors. The terms of the Loan Documents are fair and reasonable under the circumstances, reflect Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

I. Debtors and Lender have negotiated the terms and conditions of the Loan Documents and this Interim Order in good faith and at arm's-length, and any credit extended and loans made to Debtors pursuant to this Interim Order shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of Bankruptcy Code section 364(e).

J. Based on the foregoing, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor;

**III. Disposition.**

1. The Motion is granted on an interim basis on the terms and conditions set forth in this Interim Order. This Interim Order shall become effective immediately upon its entry. To the extent the terms of the Loan Documents differ in any material respect from the terms of this Interim Order, this Interim Order shall control.

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

**IV. Authorization of the Postpetition Financing and Entry Into the Loan Documents.**

2. The terms and conditions of the DIP Agreement are hereby approved on an emergency, interim basis. Debtors are hereby authorized to enter into the Loan Documents, including the DIP Agreement and such additional documents, instruments and agreements as may be reasonably required by Lender to implement the terms or effectuate the purposes of this Interim Order. Immediately upon entry of this Interim Order, Debtors are hereby authorized to borrow under the Loan Documents up to the Initial Advance Amount, in accordance with this Interim Order, the DIP Agreement, and the other Loan Documents.

3. Debtors hereby are authorized to incur the Obligations solely in accordance with the terms and conditions set forth in the DIP Agreement and this Final Order.

**V. Loan Obligations.**

4. Upon execution and delivery of the Loan Documents, the Loan Documents shall constitute valid, binding and continuing obligations of Debtors, enforceable against Debtors in accordance with the terms thereof. No obligation, payment, transfer or grant of security under the Loan Documents or this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

5. The Loans: (i) shall bear interest payable at the rates set forth in the DIP Agreement; (ii) shall be secured in the manner specified in Paragraph 7 below; (iii) shall be payable in accordance with the terms of the Loan Documents; and (iv) shall otherwise be governed by the terms set forth herein and in the Loan Documents.

**VI. Use of Loan Proceeds.**

6. Debtors may use the Loans pursuant to the terms and conditions set forth in this Interim Order and in the Loan Documents.

**VII. Grant of Superpriority Claims and Liens.**

7. As security for the full and timely payment of the Obligations, Lender is hereby granted, subject to the Carve-Out:

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

(a) pursuant to Bankruptcy Code sections 364(c)(1), an allowed administrative expense claims (the "DIP Superpriority Claim") in the Chapter 11 Cases having priority over all claims against Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kinds and over any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114, subject and junior in all instances and respects in all instances and respects only to (a) the Pre-Petition Lender's Superpriority Claims, and (b) the Carve-Out; and

(b) pursuant to Bankruptcy Code sections 364(c)(2) and (c)(3), a valid and duly perfected junior Lien on the Pre-Petition Lender's Collateral, any other assets of Debtors that are subject to a valid and perfected lien as of the Petition Date, Avoidance Actions and any other previously unencumbered assets of Debtors (collectively, the liens to be granted to Lender are referred to herein as the "DIP Lien" and the collateral subject to such DIP Lien is referred to herein as the "DIP Collateral"); provided that the DIP Lien shall in all instances and respects be subject and subordinate to (a) the lien and security interest of the Pre-Petition Lender in and to the Pre-Petition Lender's Collateral under the Pre-Petition Credit Agreement, (b) the Replacement Liens, and (c) the Carve-Out. The DIP Lien shall attach to the DIP Collateral and be binding and enforceable with respect thereto upon entry this Interim Order without further action on the part of Debtors or Lender with respect to the aggregate amount of the Loans, not to exceed the Initial Advance Amount.

8. The DIP Liens shall not be subject to challenge and shall attach and become valid, binding, continuing, enforceable, fully-perfected and non-avoidable by operation of law as of the Petition Date without any further action by Debtors, Lender, or any other person, and without the necessity of execution by Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, deeds of trust, assignment of rents, filings with the U.S. Patent and Trademark Office, or other documents. Debtors, upon the request of Lender (i) shall authorize Lender to file and record such financing statements and fixture filings with respect to any DIP Collateral identified by Lender, and (ii) shall take any such other action as required by Lender with

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

respect to DIP Collateral identified by Lender in order to perfect the DIP Liens granted herein. Lender is authorized to file or record such documents in its discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Final Order.

**VIII. Carve-Out.**

9. The DIP Lien and the DIP Superpriority Claims shall be subject to carve-out (the "Carve-Out") for (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 § U.S.C. 1930, and (ii) only to the extent the amounts are not available under the Cash Budget, an amount not exceeding two million dollars ($2,000,000) in the aggregate, which amount may be used after the occurrence and during the continuation of an Event of Default (defined below), to pay the fees and expenses of professionals retained by Debtors and any statutory committee and allowed (or allowable) by the Bankruptcy Court (as to which allowed or allowable fees and expenses the Lender waives any right to seek disgorgement); provided, however, that (x) Debtors shall be permitted to pay compensation and reimbursement of expenses allowed, allowable or otherwise authorized by the Bankruptcy Court and payable under Bankruptcy Code sections 330 and 331 in accordance with the Cash Budget; (y) the Carve-Out shall not be reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to the extent ultimately allowed or allowable by the Bankruptcy Court) prior to the occurrence of an Event of Default in respect of which the Carve-Out is invoked; and (z) the Lender waives any right to seek disgorgement thereof; and provided, further, that nothing herein shall be construed to impair the ability of the Lender to object to the reasonableness of any of the fees, expenses, reimbursement or compensation sought by the professionals retained by Debtors or any statutory committee.

**IX. 11 U.S.C. § 364(e) Protections.**

10. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any Obligations incurred pursuant to this Interim Order or the Loan Documents, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the Loan Documents with respect to any Obligations. Notwithstanding any such reversal, modification, vacation or stay, any incurrence of Obligations by Debtors pursuant to this Interim Order shall be

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

governed in all respects by the provisions of this Interim Order and the Loan Documents, and Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Bankruptcy Code section 364(e), this Interim Order, and the Loan Documents with respect to incurrence of the Obligations by Debtors.

**X. Vacation of the Automatic Stay.**

11. Notwithstanding Bankruptcy Code section 362, the automatic stay is hereby vacated and modified to the extent necessary to permit Lender, upon the occurrence and during the continuance of an Event of Default and following three (3) business days' prior notice thereof to Debtors (with a copy to counsel for any Committee, and to the United States Trustee for the District of Nevada), and without further order of or application to the Bankruptcy Court to: (i) immediately cease any obligation to provide funding of Loans, (iii) declare the Obligations immediately due and payable, (iv) declare the Loans or any portion thereof then outstanding to be forthwith due and payable, whereupon the principal of such Loans together with accrued interest thereon and any unpaid accrued fees and all other liabilities of Debtors under any Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by Debtors, anything contained herein or in any other Loan Document to the contrary notwithstanding, and (v) after three (3) business days' prior notice (the "Stay Notice Period") to Debtors and any Committee, and absent order of the Bankruptcy Court to the contrary, exercise any and all remedial rights with respect to the DIP Collateral; provided that Lender consents to a hearing before the Bankruptcy Court with respect to the foregoing on such shortened time as may be available according to the Bankruptcy Court's calendar and the stay shall remain in effect pending such a hearing if requested by Debtors prior to the expiration of the Stay Notice Period.

**XI. Miscellaneous Provisions.**

12. The provisions of this Interim Order shall be binding upon and inure to the benefit of Lender, Debtors, and their respective successors and assigns. The provisions of this Interim Order and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of reorganization in the Chapter 11 Cases unless otherwise provided therein; (ii) converting either of the Chapter 11 Cases to one under chapter 7 of the Bankruptcy Code; or (iii) dismissing either of the

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Interim Order shall maintain their priority as provided by this Interim Order until all of the Obligations are indefeasibly paid in full and discharged in accordance with the terms of this Interim Order and the DIP Agreement.

13. Debtors hereby are authorized, without further order of this Court, to enter into agreements with Lender providing for (a) non-material modifications to the DIP Agreement, or (b) any other modifications to the DIP Agreement necessary to conform the DIP Agreement to this Interim Order.

14. To the extent applicable, this Interim Order is not subject to the 14-day stay provision of Bankruptcy Rule 4001(a)(3).

15. Debtors shall cause a copy of this Interim Order to be served within three (3) business days of its entry, by electronic mail, U.S. Mail or the Court's ECF noticing of the Interim Hearing to: (a) the Lender: __________; (b) Pre-Petition Lender: ________________, (b) the Office of the United States Trustee for the District of Nevada, Attn: ___; (c) counsel for any statutory committee appointed in this case, and if no such committee was appointed, then to the parties listed on the List of Creditors Holding the 20 Largest Unsecured Claims; and (d) all other secured creditors, and all other parties requesting notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").

19. A hearing to consider entry of an order granting the relief set forth in this Interim Order on a final basis (the "Final Order") shall be held on ____________, at ____ _.m. (the "Final Hearing") in _____________; with any objections (the "Objections") to entry of a Final Order due to be timely filed electronically with the Court and served on the Notice Parties and Debtors' counsel: Fox Rothschild, LLP, 3800 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169, Attn: Brett A. Axelrod, Esq. (collectively, the "Objection Notice Parties") (with a courtesy copy delivered directly to the Chambers of the Honorable _________) so as to be actually received no later than ___________, 2014. Replies to timely-filed Objections, if any, shall be filed with the Bankruptcy Court electronically and served so that they are received no later than ___________________, 2014 (with a courtesy copy delivered directly to the Chambers of the Honorable _______) by the Objection Notice Parties and the objecting party.

DATED: ___, 2014.

Prepared and respectfully submitted by:

**FOX ROTHSCHILD LLP**

By____*/s/*_____________________________

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169

*[Proposed] Counsel for Martifer Solar USA, Inc. and Martifer Aurora Solar, LLC*

APPROVED/DISAPPROVED:

**OFFICE OF THE UNITED STATES TRUSTEE**

BY_________________________________

Trial Attorney for Acting U.S. Trustee, ________

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)

**CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021**

In accordance with Local Rule 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

☐ The Court has waived the requirement set forth in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion, pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

FOX ROTHSCHILD LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
(702) 262-6899
(702) 597-5503 (fax)