Michael Gerard Fletcher (CA State Bar No. 070849)
  (admitted *pro hac vice*)
  mfletcher@frandzel.com
Reed S. Waddell (CA State Bar No. 106644)
  (admitted *pro hac vice*)
  rwaddell@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California 90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

NATALIE M. COX, ESQ.
Nevada Bar No. 007662
RANDOLPH L. HOWARD, ESQ.
Nevada Bar No. 006688
KOLESAR & LEATHAM
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Telephone: (702) 362-7800
Facsimile: (702) 362-9472
E-Mail: ncox@klnevada.com
rhoward@klnevada.com

Attorneys for secured creditor CATHAY BANK

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>MARTIFER SOLAR USA, INC.,<br><br>Debtor. | CASE No. BK-S-14-10357-abl<br><br>Chapter 11<br><br>**OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY**<br><br>Date:   January 28, 2014<br>Time:   9:30 a.m. |

**TO THE HONORABLE AUGUST B. LANDIS, UNITED STATES BANKRUPTCY JUDGE:**

Cathay Bank ("Bank") is the senior-most secured creditor of Debtor Martifer Solar USA, Inc. ("USA") and Martifer Aurora Solar, LLC, USA's affiliated entity also in bankruptcy (District of

Nevada Bankruptcy Case No. BK-S-14-10355-abl) ("Aurora"). The Bank is owed in excess of $6,300,000 by USA and has a duly perfected senior-most security interest in all of USA's and Aurora's assets. See Declaration of Eileen Lewis ("Lewis Declaration") Exhibits 1 - 6.

The Bank opposes the USA motion for approval of post petition DIP financing from its insider parent corporation Martifer Solar, Inc. ("Solar"), which is not in bankruptcy. USA proposes to operate post-petition by hemorrhaging red ink, i.e., hemorrhaging the Bank's cash collateral. Staunching the red ink by loans from the insider parent via this proposed financing not only does not solve any of the Debtors' operational issues, but would seriously be detrimental to the Bank and its security interests.

**Additionally, and as importantly, the proposed DIP financing loan violates and breaches the terms of at least two pre-petition subordination agreements between the Bank and the Debtors' direct parent entity that are fully enforceable post petition. [1]**

## I.

## SUMMARY OF MOTION OPPOSITION

By separate Emergency Cash Collateral Motions, the Debtor's seek the Court's authority to use all proceeds of the Bank's collateral collected during the next 13 weeks, while paying the Bank only its contract rate of interest, which according to the Debtors' own projections, result in huge operational shortfalls. The Debtors claim that they require the proposed DIP Financing agreement in order to shore up the Debtors' post-petition operational losses and professional fee obligations by using a post-petition secured loan of either $5 million, or $10 million (depending on which portion of the motion one is reading). This DIP Financing is being offered by the insiders of the Debtors.

The proposed structure is fatally flawed and does significant harm to the Bank.

The insider proposed lender promised the Bank previously, in writing, that it would not engage in the precise type of lending transactions that are the subject of the Motion, as set forth in written subordination agreements and provisions. The proposed DIP lender, Solar, is the immediate parent of

---

[1] It is beyond strange that neither Aurora nor USA bothered to inform this Court of the existence of the pre-petition subordination agreements that prevent this proposed DIP loan from even being made.

1379084.1 | 023000-0918

2

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

Debtor USA, and has promised the Bank that it would not permit the Debtors to make any payments to Solar, and that Solar would not receive any payments from the Debtors for as long as any indebtedness was owed by the Debtors to the Bank. Solar is not entitled to receive any promissory notes, or accelerate, or collect on, any indebtedness owed by the Debtors to Solar. They also promised that Solar would never be granted any collateral, unless the defaulted loans and extensions of credit owed by the Debtors to the Bank were first paid. In full. Further, Solar stated that it was an express trustee for the benefit of the Bank with regard to any such payments or collateral, and that all such amounts should and would be turned over to the Bank if any such payments were made by, or collateral received from, the Debtors in violation of the subordination agreements and related provisions.

These agreements are fully enforceable post-petition. As the express assignee of Solar's rights with respect to any such loan, the Bank does not consent to this transaction. Further, it does not consent to the breaches of fiduciary duties inherent in the Motion.

Additionally, the Debtors have diverted at least $1.5 million pre-petition from the proceeds of the sale of the Bank's collateral. The Bank is still investigating such diversions.

Finally, the Debtors propose to give its insider post-petition lender a senior-most super priority expense of administration, which is another form of collateral that is not permitted.

## II.

## THE PRE-PETITION SUBORDINATION AGREEMENTS SHOULD PREVENT THE COURT FROM APPROVING THE PROPOSED POST-PETITION INSIDER FINANCING

Pre-petition, Solar, the proposed post petition lender, and the Bank entered into subordination agreements that prevent the proposed post petition DIP financing. The Debtors USA and Aurora acknowledged the prohibitions, and approved them. They promised the Bank that in exchange for the Bank making available to the Debtors the pre-petition $12 million loan, they <u>would not engage</u> in the types of financing DIP transactions that are the subject of the instant Motion. These Subordination

1379084.1 | 023000-0918

3

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

1 Agreements are not only enforceable in bankruptcy, but they should be enforced.[2]

**A.     The Pre-Petition Subordination Agreements.**

On November 15, 2012, Debtor's USA and Aurora entered into a Business Loan Agreement (Asset Based) and various Commercial Security Agreements with the Bank evidencing the pre-petition lending transactions between the Bank and Debtors USA and Aurora. (Lewis Declaration re Adequate Protection, Exhibits 1 and 6).

At the same time, Solar, the non-debtor insider parent of USA and Aurora, entered into an express Subordination Agreement ("Solar Subordination Agreement") (Lewis Supplemental Declaration, Exhibit 13). Solar also subordinated all of its rights to the Bank at that time it further executed a Commercial Guaranty also dated November 15, 2012 (Id., Exhibit 14).

**1.     Solar Subordination Agreement.**

The Solar Subordination Agreement contains the following provisions. First, the Solar Subordination broadly encompasses **all financial arrangements** involving Solar with USA, Aurora, and the Bank. The Subordination Agreement states in pertinent part:

> **SUBORDINATED INDEBTEDNESS.** The words "Subordinated Indebtedness" as used in this Agreement **mean all present and future indebtedness, obligations, liabilities, claims, rights, and demands of any kind which may be now or hereafter owing from Borrower [USA and Aurora] to Creditor [Solar]. The term "Subordinated Indebtedness" is used in its broadest sense** and includes without limitation all principal, all interest, all costs, attorneys' fees, all sums paid for the purpose of protecting the rights of a holder of security, all contingent obligations of Borrower such as a guaranty), and all other obligations, secured or unsecured, of any nature whatsoever.
>
> **SUPERIOR INDEBTEDNESS.** The words "Superior Indebtedness" as used in this Agreement **mean and include all present and future indebtedness, obligations, liabilities, claims, rights, and demands of**

---

[2] The attempt to ignore the subordination agreements is not only a breach of fiduciary duties to the Bank, *see Berg v. Berg Enterprises*, 178 Cal.App. 4th 1020, 1041, 100 Cal.Rptr. 875 (2009) (insiders of insolvent entities have a fiduciary duty to creditors not to, and cannot, benefit themselves to the detriment of creditors; to do so is a breach of fiduciary duty), but would constitute the commission post petition of the intentional torts of intentional interference with contract, and intentional interference with prospective economic advantage. This Court should not sanction breaches of fiduciary duty; nor should it approve the Debtors and Solar committing intentional torts post petition.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920

1379084.1 | 023000-0918

4

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

**any kind which may be now or hereafter owing from Borrower [USA and Aurora] to Lender [Cathay Bank]. The term "Superior Indebtedness" is used in its broadest sense** and includes without limitation all principal, all interest, all costs, attorneys' fees, all sums paid for the purpose of protecting Lender's rights in security (such as paying for insurance on collateral if the owner fails to do so), all contingent obligations of Borrower (such as a guaranty), all obligations arising by reason of Borrower's accounts with Lender (such as an overdraft on a checking account), and all other obligations of Borrower to Lender, secured or unsecured, of any nature whatsoever. [Emphasis added.]

Then, Solar agreed:

**SUBORDINATION.** All Subordinated Indebtedness of Borrower [USA and Aurora] to Creditor [Solar] is and shall be subordinated in all respects to all Superior Indebtedness of Borrower [USA and Aurora] to Lender [Cathay Bank]. If Creditor [Solar] holds one or more Security Interests, whether now existing or hereafter acquired, in any of Borrower's real property or personal property, Creditor also subordinates all Creditor's Security Interests to all Security Interests held by Lender, whether now existing or hereafter acquired.

Solar has specifically agreed, in writing, that nothing would or will be paid to Solar post default to the Bank, including in any bankruptcy proceeding, with regard to any indebtedness owed to Solar until the Bank had been paid in full the entirety of the amounts owed to it by the Debtors. As stated in the next provision, Solar also assigned to the Bank all such rights to payment and all collateral associated with any such rights to payment. The Debtors both acknowledged such assignments. The Solar Subordination Agreement states specifically:

**PAYMENTS TO CREDITOR.** Except as provided below, Borrower will not make and Creditor will not accept, at any time while any Superior Indebtedness is owing to Lender, (A) any payment upon any Subordinated Indebtedness, (B) any advance, transfer, or assignment of assets to Creditor in any form whatsoever that would reduce at any time or in any way the amount of Subordinated Indebtedness, or (C) any transfer of any assets as security for the Subordinated Indebtedness. Notwithstanding the foregoing, Borrower may make regularly scheduled payments of interest only to Creditor so long as Borrower is not in default under any agreement between Lender and Borrower, Creditor may not accelerate any amounts owed to Creditor without Lender's prior written consent.

In the event of any distribution, division, or application, whether partial or complete, voluntary or involuntary, by operation of law or otherwise, of all or any part of Borrower's assets, or the proceeds of Borrower's assets, in whatever form, to creditors of Borrower or upon any indebtedness of Borrower, whether by reason of the liquidation, dissolution or other winding-up of Borrower, or by reason of any

> execution sale, receivership, insolvency, or bankruptcy proceeding, assignment for the benefit of creditors, proceedings for reorganization, or readjustment of Borrower or Borrower's properties, then and in such event, (A) the Superior Indebtedness shall be paid in full before any payment is made upon the Subordinated Indebtedness, and (B) all payments and distributions, of any kind or character and whether in cash, property, or securities, which shall be payable or deliverable upon or in respect of the Subordinated Indebtedness shall be paid or delivered directly to Lender for application in payment of the amounts then due on the Superior Indebtedness until the Superior Indebtedness shall have been paid in full.

The Solar Agreement further provides that the Bank, not USA, not Aurora, and not Solar, is entitled by express assignment to all such loan documents for its own rights. Further, Solar has designated the Bank as its attorney-in-fact with the express power to object to and reject any such financing arrangement that it and the Debtors might enter into without the Bank's express consent.

> In order that Lender may establish its right to prove claims and recover for its own account dividends based on the Subordinated Indebtedness, Creditor does hereby assign all its right, title, and interest in such claims to Lender. Creditor further agrees to supply such information and evidence, provide access to and copies of such of Creditor's records as may pertain to the Subordinated Indebtedness, and execute such instruments as may be required by Lender to enable Lender to enforce all such claims and collect all dividends, payments, or other disbursements which may be made on account of the Subordinated Indebtedness. For such purposes, Creditor hereby irrevocably authorizes Lender in Its discretion to make and present for or on behalf of Creditor such proofs of claims on account of the Subordinated Indebtedness as Lender may deem expedient and proper and to vote such claims in any such proceeding and to receive and collect any and all dividends, payments, or other disbursements made thereon in whatever form the same may be paid or issued and to apply the same on account of the Superior Indebtedness.

Finally, the Solar Subordination Agreement explicitly provides that Solar is an express trustee for the Bank. Anything of value ever distributed to Solar, whether made up of cash or noncash assets, is specifically to be held by Solar as an a express trustee in favor of the Bank. In that regard, the Solar Subordination Agreement states:

> Should any payment, distribution, security, or proceeds thereof be received by Creditor at any time on the Subordinated Indebtedness contrary to the terms of this Agreement, <u>Creditor immediately will deliver the same to Lender in precisely the form received (except for the endorsement or assignment of Creditor if necessary), for application on or to secure the Superior Indebtedness, whether it is due or not due, and until so delivered the same shall be held In trust by</u>

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920

<u>Creditor as property of Lender.</u> In the event Creditor fails to make any such endorsement or assignment, Lender, or any of Its officers on behalf of Lender, is hereby irrevocably authorized by Creditor to make the same. [Emphasis added.]

**2.**     <u>The Commercial Guaranty Subordination.</u>

Additionally, Solar executed its Commercial Guaranty in favor of the Bank as referenced above. Payment of any amounts owed is expressly subordinated to the rights of the Bank to be paid in full first. The collateral rights of the Bank are senior to any security that may be taken by them. Solar is an express trustee over all such cash payments and noncash benefits for the benefit of the Bank. The guaranty provides:

> Subordination of Borrower's Debts to Guarantor. Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower, <u>In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the indebtedness</u>. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment In legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce Its rights under this Guaranty. [Emphasis Added].

The parties that are the subject of the Motion all received $12 million in financing from the Bank, in part, by promising the Bank that they would not engage in the lending transactions that are the subject of the Motion. Solar explicitly promised that it would not be entitled to payment of anything of value, and would not be entitled to enjoy any collateral from the Debtors USA and Aurora until the Bank was paid in full on its defaulted loans. Solar is an express trustee for the benefit of the Bank regarding anything of value that it may be entitled to receive, which instead, must be paid to the

Bank.

All parties to the lending transaction that is the subject of the Motion explicitly knew of these provisions. Both Debtors USA and Aurora, together with Solar, executed and delivered to the Bank the Solar Subordination Agreement. Solar executed the Commercial Guaranty containing similar subordination provisions. The post-petition loan that is the subject of the Motion is an explicit attempt by these parties to breach the fiduciary duties owed to the Bank as a beneficiary of the express trust established in the Subordination Agreement and in the Commercial Guaranty, and under applicable law. See *Berg v. Berg Enterprises*, supra at 1041.

The proposed post-petition DIP loan, however, wrongfully attempts to seek this Court's imprimatur to disregard the contractual obligations of the parties that the Bank be paid in full before (non-Debtor) Solar is entitled to be paid anything from the Debtors or take any collateral. Additionally, the Solar Subordination agreement precludes the Debtors USA and Aurora from executing, or Solar from receiving, any promissory notes or any pledge of collateral. Further, there may be no maturity date in any agreement, nor may there be any acceleration provisions, rendering any attempt to define "Events of Default" as wrongful and a breach of the Solar Subordination Agreement.

None of this may be sanctioned, the Bank respectfully submits. The Bank does not approve of any loan between the Debtors and Solar.

**B.     Pre-Petition Subordination Agreements Are Enforced In Bankruptcy According To Their Terms.**

Under the provisions of 11 U.S.C. § 510(a), pre-petition subordination agreements are supposed to be enforced according to their terms. In that regard, section 510(a) states:

> A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.

Further, inequitable conduct such as breaches of fiduciary duty or an attempt to deprive the Bank of its express rights under such pre-petition agreements are grounds to equitably subordinate all claims Solar may have regarding this post-petition loan. See, 11 U.S.C. § 510(c)(1). As noted in the Lewis Declaration and Supplemental Declaration, these parties expressly induced the Bank to forebear

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920

1 from taking enforcement actions pre-petition based upon the written representation that the $5 (or

2 $10) million that is the subject of this post-pre-petition loan would instead be paid to the Bank reduce

3 the outstanding debts owed to the Bank.  Breach of these pre-petition written assurances is further

4 evidence of bad faith and inequitable conduct on the part of the parties to this proposed post-petition

5 loan.

6 In *Enstar Group, Inc. v. The Bank of New York (In re Amret Inc.)*, 74 B.R. 315 (B.C.Al. 1994),

7 the United States District Court upheld a ruling of the bankruptcy court that refused to sanction a

8 wrongful post-petition loan very similar to the loan that is the subject of the instant Motion. In *Enstar*,

9 an insider post-petition lender to the bankruptcy debtor attempted to enforce the post-petition loan that

10 insider had made to the debtor over the objection of debtor's pre-petition lender, The Bank of New

11 York. The post-petition insider lender had executed an express subordination agreement pre-petition

12 in favor of The Bank of New York pre-petition to induce the Bank to loan money pre-petition to the

13 debtor.  As stated by the *Enstar* court:

> The subordination agreement involved in the present case is a 'complete' subordination agreement which means that the contract required that all indebtedness be paid to the Bank of New York in full before any of the subordinated creditors, Enstar being one of them, are allowed to receive payments.

17 *Enstar v. Bank of New York, supra,* 74 B.R. at 318-319.  This is just like the subordination

18 agreements in favor of the Bank in this matter. The District Court in Enstar upheld the ruling of the

19 bankruptcy court which had:

> . . . concluded that, as a matter of law pursuant to 11 U.S.C. § 510(a), that the filing of the Chapter 11 petition does not affect the enforceability of the subordination agreement. Moreover, the court found that Enstar made the loan with full knowledge of the subordination agreement and without requesting a waiver from the Bank.

24 *Enstar v. Bank of New York, supra,* 74 B.R. at 318-319.

25 For the foregoing reasons, the Bank respectfully submits that this Court should not approve

26 what amounts to breaches of fiduciary duties owed to the Bank and a violation of the express

27 provisions of the Solar Subordination Agreement and the Solar Continuing Guaranty.

28 The proposed post-petition loan documents require the Debtors USA and Aurora to pay Solar

1379084.1 | 023000-0918

9

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF
DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

1 directly, and for Solar to receive collateral, promissory notes, and acceleration provisions in its favor.
2 The Proposed Financing also provides for liens and super-priority expenses of administration for
3 Solar, without any reference whatsoever to the previously granted superior rights of the Bank by
4 virtue of the Solar Subordination Agreement and the Solar Commercial Guaranty.  In fact, there is
5 nothing about the proposed post-petition loan that protects any of the Bank rights.

6       The Bank respectfully requests that the Court deny the Motion and prevent any such loan by
7 Solar.

8       **WHEREFORE**, the Bank respectfully submits that the DIP financing application should be
9 denied.

10 DATED: January 27, 2014      FRANDZEL ROBINS BLOOM & CSATO, L.C.
                                           MICHAEL GERARD FLETCHER
11                                            REED S. WADDELL

By: /s/ Reed S. Waddell
    Reed S. Waddell
    Attorneys for Secured Creditor CATHAY BANK

1379084.1 | 023000-0918

10

OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR APPROVAL OF
DIP FINANCING BY INSIDER NON-DEBTOR ENTITY

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920