1  Michael Gerard Fletcher (CA State Bar No. 070849)
     (admitted *pro hac vice*)
2  Reed S. Waddell (CA State Bar No. 106644)
     (admitted *pro hac vice*)
3  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   6500 Wilshire Boulevard
4  Seventeenth Floor
   Los Angeles, California  90048-4920
5  Telephone: (323) 852-1000
   Facsimile: (323) 651-2577
6
   NATALIE M. COX, ESQ.
7  Nevada Bar No. 007662
   RANDOLPH L. HOWARD, ESQ.
8  Nevada Bar No. 006688
   KOLESAR & LEATHAM
9  400 South Rampart Boulevard, Suite 400
   Las Vegas, Nevada 89145
10 Telephone: (702) 362-7800
   Facsimile: (702) 362-9472
11 E-Mail: ncox@klnevada.com
   rhoward@klnevada.com
12
   Attorneys for Secured Creditor CATHAY BANK
13

14                **UNITED STATES BANKRUPTCY COURT**

15                       **DISTRICT OF NEVADA**

| | |
|---|---|
| 16  In re | CASE No. BK-S-14-10357-abl |
| 17  MARTIFER SOLAR USA, INC., | Chapter 11 |
| 18        Debtor. | **OBJECTION OF SECURED CREDITOR CATHAY BANK TO EMERGENCY MOTION FOR USE OF CASH COLLATERAL; APPENDIX OF STATE AUTHORITY** |
| 19 | |
| 20 | |
| 21 | Hearing Date:   Jan. 28, 2014 |
|    | Hearing Time:   9:30 a.m. |
| 22 | |

23     **TO THE HONORABLE AUGUST B. LANDIS, UNITED STATES BANKRUPTCY**

24 **JUDGE:**

25         Cathay Bank ("Bank") is the senior-most secured creditor of Debtor Martifer Solar USA, Inc.

26 ("USA").  The Bank is owed an excess of $6,000,000 by USA and has a duly-perfected senior-most

27 security interest in all of USA's assets.  *See* Declaration of Eileen Lewis ("Lewis Declaration") ¶¶ 9

28 and 31, Exhibits 3-4 and 11-12.

The Bank opposes the Debtors' Motions for use of cash collateral. By the Debtors' own numbers, the Debtors seek to operate for the next 13 weeks, post-petition, by hemorrhaging red ink to the tune of more than $1.4 Million (PLUS Administrative Expenses), to the serious detriment of the Bank and its security interests. Further, in large part, USA asks this Court for permission to use approximately $505,000 which is not property of the bankruptcy estate and over which this Court has no jurisdiction.[1]

## I.
## THIS COURT HAS NO JURISDICTION TO APPROVE THE USE OF MONEY THAT IS NOT PROPERTY OF THE ESTATE

This Court has no jurisdiction under 28 U.S.C. section 1334 to administer assets that are not property of the USA bankruptcy estate. Accordingly, the Court should not enter any orders concerning the $505,700 reflected as the opening cash balance on the USA proposed cash collateral budget and cash flow, that is not property of the bankruptcy estate.

**A.    The Res of A Trust Is Not Property of the Estate and This Court Has No Jurisdiction Over It.**

Upon the filing of a bankruptcy petition, an estate is created and various assets are deemed to be "property of the estate." 11 U.S.C. section 541(a). But, however, the res of a trust in which the debtor is the trustee is expressly deemed to be not property of the bankruptcy estate, *see* 11 U.S.C. § 541(d) (equitable interest in property in which the debtor holds legal title but no equitable interest is not property of the estate), and this Court does not have jurisdiction over such res.

**B.    The $505,700 Reflected as the USA Opening Cash Balance is the Res of a Trust.**

As is reflected in the accompanying Lewis declaration, pre-petition, USA wrongfully took and diverted the proceeds of the Bank's pre-petition collateral, and deposited such wrongfully diverted proceeds into an account maintained at California Bank and Trust ("CBT") in West Los Angeles. Under California Civil Code section 2223 and 2224 assets wrongfully obtained constitute the res of a

---

[1] The Bank also has serious questions about the propriety of the venue chosen by USA in this matter. USA conducts all of its business from its headquarters in West Los Angeles, California. The Bank is located in Southern California. All of the witnesses and all of the records are located in Southern California and there is significant reason to believe that the USA bankruptcy should be pending in the United States Bankruptcy Court for the Central District of California, in the Los Angeles Division. The Bank reserves all its rights in this regard.

constructive trust and the holder thereof is a trustee under California law.[2]  The Bank confirmed the wrongful diversion through a forensic audit.  The opening cash balance reflected on the USA cash collateral motion budget and cash flow projection is the remaining balance in the CBT account.

California has enacted an explicit protection for those who are the victims of breaches of fiduciary duty and wrongdoing with regard to converted assets.  Under California Financial Code section 1450, a bank operating in the state of California is instructed to ignore any instructions, oral or written, from anyone other than the account holder with respect to funds maintained in a bank account.  A special exception exists, however, for funds held by a fiduciary as to which there is reason to believe further breaches of fiduciary duty and defalcations are about to occur.  In that circumstance, an aggrieved party, here the Bank, is entitled to serve on the bank holding the account, here CBT, an affidavit setting forth the facts of the breaches of fiduciary duty.  The Bank holding the account is obligated under California law to freeze the account in place for three court days while the parties proceed to court to have a judicial determination of the underlying facts a breach of fiduciary duty.

The Bank utilized the procedures set forth in Financial Code section 1450.  On the morning of Tuesday, January 21, 2014, the Bank served on CBT its Financial Code section 1450 affidavit.  USA filed its bankruptcy petition later that day.  On January 22, 2014, the Bank filed within the three court days its statement under section 546(b) of the Bankruptcy Code [ECF USA Docket No's 20 & 21], thereby completing all action necessary to establish the trust nature of these funds.

Because the balance in the CBT account on the petition date, reported by USA to be $505,700, constituted the res of a trust on the petition date, it is not property of the estate and this Court has no jurisdiction to address such funds or to permit USA to utilize such funds during the course of this bankruptcy.[3]

---

[2] For the convenience of the Court, applicable California authority is attached hereto in an appendix.

[3] The USA bankruptcy filing prevented a court of competent jurisdiction, the Los Angeles County Superior Court, from fulfilling its duties under Financial Code section 1450.  At the time of the service of the Financial Code section 1450 affidavit, the Bank had pending before the Los Angeles County Superior Court an action entitled Cathay Bank v. Martifer Solar USA, Inc. et al., Los Angeles County Superior Court Case No. SC121853 ("State Court Action").  The State Court was fully capable of and prepared to rule with respect to the Financial Code section 1450 affidavit at an ex parte hearing set for Wednesday, January 22, 2014, which court appearance was stayed by the bankruptcy petition filing.

Frandzel Robins Bloom & Csato, L.C.
6500 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048-4920

## II.

## **CATHAY BANK IS NOT ADEQUATELY PROTECTED BY USA'S OPERATIONS**

Additionally, Cathay Bank is not adequately protected by the proposed operations by USA and its affiliate in these matters. The proposed cash flow budget[4] shows a significant hemorrhage of red ink throughout the 13-week proposal period for the use of cash collateral. Indeed, USA admits that it intends to deteriorate Cathay Bank's collateral by net of $1.3 million just through the initial 13-week period. Even if the Court were to permit the Debtors to spend the Bank's cash collateral, the only possible way the Debtors can survive is via the proposed DIP financing facility from the Debtors' Parent, in a junior secured position, which has been noticed for hearing contemporaneously herewith[5]. In other words, for the first 13 weeks, the Debtor must borrow more than $2 Million in order to lose $1.3+ Million via its operations.

Furthermore, the Debtors' moving papers are bereft of any admissible evidence regarding the actual value of the Bank's collateral or regarding the existence of an "equity cushion," that might protect the Bank for the next 13 weeks while the Debtors' incur $2 Million in debt to an insider so their operations can lose $1.3 Million. As set forth in the Lewis Declaration, the Bank has serious doubts as to the ultimate collectability of the Debtor's accounts which comprise the bulk of the Bank's Collateral.

In addition to the significant operational losses and junior borrowing the Debtor "requires" to get through the next 13 weeks, the Cash Collateral Motion also *audaciously requests that the Court impose a $2 Million "carve-out" out of the Bank's cash collateral for the Debtors' professional fees and other related administrative expenses.* This request, made only days from the filing of the

---

[4] Interestingly, notwithstanding that the Debtors' Motions for Joint Administration of these estates goes out of its way to make sure the Court understands that they are not seeking Substantive Consolidation of these estates, the Cash Collateral Motion (and, for that matter, the DIP Financing Motion) each act and sound like the two Debtors' Estates are consolidated. They offer only a consolidated cash flow budget, and make no distinctions whatsoever between their operations and post-petition activities. Query: Do the Debtors intend on separately accounting for anything? Or do they intend on both estates being jointly and severally liable for the postpetition obligations (including professional fees) of each other's estates?

[5] The Bank has filed a separate Opposition to the Proposed DIP Financing Facility in each Debtor's case, together with supporting Declarations. Given that the Bank has been given less than 24 hours notice of the instant hearing date, the Bank hereby incorporates all its objections and supporting declarations filed in opposition to the DIP Financing Motion herein as though set forth in full.

Petitions and before the Debtors' counsel has filed its employment applications, is asking the Court for a "First Day Order" which pre-approves a $2 Million surcharge on Bank's collateral for all administrative expenses to be incurred by the Debtors' professionals in the future (!) With all due respect to the moving papers, the Bankruptcy Code contains no authority whatsoever for such a "pre-approved" surcharge or carve-out for the Debtor's proposed professionals. *See In re Cascade Hydraulics and Utility Service, Inc.*, 815 F.2d 546 (9th Cir. 1987).

The Bank is not adequately protected through USA's operations. The Bank is not adequately protected by being given a security interest in post petition assets, meager as they are. The Bank is not adequately protected by USA's hemorrhaging red ink. The Proposed DIP Financing is dead in the water due to the enforceable subordination agreements executed in the Bank's favor by the proposed lender.

WHEREFORE, the Bank respectfully submits that the cash collateral application should be denied. Given the very limited opportunity that the Bank was given to file these opposition papers, the Bank reserves all its rights to file additional opposition papers, which may include objections not included in this pleading, in advance of any further hearing that might be held on these, or similar, matters.

DATED: January 27, 2014

KOLESAR & LEATHAM
RANDOLPH L. HOWARD
NATALIE M. COX

By:  /s/ Natalie M. Cox
    NATALIE M. COX
    Designated Local Counsel for Cathay Bank, a
    California Banking Corporation

FRANDZEL ROBINS BLOOM & CSATO, L.C.
MICHAEL GERARD FLETCHER
REED S. WADDELL

By:  /s/ Michael Gerard Fletcher
    MICHAEL GERARD FLETCHER
    Attorneys for Cathay Bank, a California banking
    corporation

**APPENDIX OF STATE AUTHORITY**

**Cal. Civ. Code § 2223. Who is involuntary trustee**

One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner.

**Cal. Civ. Code § 2224. Involuntary trusts of wrongful gains**

One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.